## Libby, McNeill & Libby v. Peter B. Cook.

### Gen. No. 12,037.

1. MASTER—*what not essential to liability for defective machinery.* Actual knowledge of the extent and character of the defect is not necessary to create liability. It is sufficient if the master might have known of such defect by the use of reasonable diligence. No defect is latent which an inspection will disclose; hence the master is chargeable with knowledge of what an inspection will inform him of.

2. REMARKS OF COUNSEL.—*when improper.* A remark made to a witness during cross-examination, "Have you anything to conceal here, sir," where not justified by the record, is improper.

3. ASSUMPTION OF RISK—*what essential to.* Not only the defects but the dangers must be known to the servant to create an assumption of risk.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Affirmed. Opinion filed December 8, 1905. Rehearing denied December 22, 1905.

Statement by the Court. This is an appeal from a judgment for $6,000 rendered in the Superior Court in an action brought by appellee to recover for personal injuries.

The injuries complained of were inflicted by the cylinder head of an engine which gave way or burst, a piece of it striking appellee, causing a compound fracture of the left leg between the thigh and knee joint. The accident was caused by the breaking of an appliance called a "strap" used to connect the piston rod of the engine with the connecting rod. The latter was attached to the crank of the large driving wheel carrying the main belt by which the power was transmitted to the machinery which the engine operated. The breaking of the "strap" took off resistance from the piston head, allowing the latter to be driven back against the cylinder head, causing it to burst out. ' The "strap," the breaking of which seems to be conceded to have been the primary cause of the accident, is a solid piece of metal having parallel sides connected by a semi-circular end. Its shape is like that of the letter U with the parallel sides somewhat prolonged. The curved part referred to as the "throat" is so placed as to play around the boxing or brasses which encircle the "pinion" on the end of the piston rod. The "strap" in this way joins the connecting rod which drives the large wheel, with the piston rod which works rigidly back and forth. The sides of the "strap" are held firmly to the connecting rod by a "gib" and a "key" inserted in slots made in the strap and rod. The "strap" is about an inch and a quarter thick at the center of the curve or throat, fifteen-sixteenths of an inch thick at the junction of the sides with the beginning of the curve where the fractures occurred, about three inches wide, and the sides are about nine inches in length, forming a substantial and solid piece of metal. No complaint is made that it was not of a size and construction ordinarily adequate for its purposes. After the accident it was found that the "throat" or curved part of the strap had broken completely off from the two parallel sides, the fracture occurring on both sides at the points where the curve

began, leaving the two sides of the strap still attached to the connecting rod with the "gib" and "key" in place.

The plaintiff was employed as an oiler in the engine room where the accident occurred. At the moment of the bursting out of the cylinder head he was passing in such close proximity as to receive the injury complained of.

The jury returned a verdict finding the defendant guilty and assessing the damages. Judgment was entered on the verdict and appeal allowed.

E. E. Gray, F. J. Canty and J. C. M. Clow, for appellant.

James C. McShane, for appellee.

Mr. Justice Freeman delivered the opinion of the court.

The declaration contains a single count and charges that appellant negligently permitted the "strap," the breaking of which was the cause of appellee's injury, to become and remain in a defective, improper and unsafe condition, in that it was sprung, broken, weakened and otherwise defective and liable to break, and that appellant knew or, by the exercise of ordinary care, might have known this in time to avoid the injury.

It is urged in appellant's behalf that up to the instant in which the accident happened the engine was in perfect running order; that the "strap" was not loose but fitted perfectly tight on the connecting rod, that there was nothing to indicate that it was loose nor could an examination disclose any looseness, that there is no evidence that the small open space observed at the end of the strap between it and the rod extended along the rod to the curve of the strap or more than about an inch and a half from its end, in other words no evidence that the strap was not firmly held close to the connecting rod throughout except the inch and a half referred to; that for no part of this distance was the opening or space greater than the thickness of a sheet of paper, and that this space or opening did not and could not cause the break.

It is no doubt true, as claimed by appellant's attorneys, that the engine was apparently in good order and condition so far as indicated by its operation and external appearance up to the time of the accident. It is true also that the strap did not appear to be loose on the connecting rod. The only evidence indicating the possibility that the strap might be slightly sprung was the very narrow space or opening, possibly not wider than to permit the insertion of a sheet of paper, between it and the rod at the end of the strap. There is no evidence that this opening, slight as it was, extended through the entire length or even width of the strap. It was at the most so small an opening as to have no meaning at all, unless to an expert. Appellee states that when his attention was called to it this opening was about an eighth of an inch wide, but in this he is not, so far as we can discover, corroborated and is contradicted by a preponderance of the testimony. It may be true also that the small opening referred to did not itself cause the break. The question is not whether it caused the break, but whether it was an indication of a possible concealed break, whether it was of a character such that it should have put appellant's representatives on inquiry in the exercise of due and ordinary care. Appellee testifies that the day before the accident or about that time the engineer in charge and the foreman of the machine shop were engaged in tightening a crank pin and the engine was shut down for that purpose, that while the foreman was driving down the key, appellee—himself a licensed engineer, employed at the time, however, as an oiler for want of a better job— "noticed that the upper part of the strap where it came or ought to come flush on the rod was sprung up at the end," and that he called the foreman's attention to it. He states that the foreman looked at it and in reply to appellee's question if he did not think it dangerous, replied: "No, it's all right." He states that there was also some talk between the engineer and foreman "about the strap being sprung." In this he is corroborated by the engineer, who says he had some talk with the foreman about the strap

being sprung, and that the latter thought it was merely worn, not sprung, and that it was all right. The engineer also testifies that appellee told the foreman he thought the strap was sprung. These witnesses are both corroborated in this respect by the testimony of the foreman himself, who was called as a witness by the defendant. He states that it was his duty as foreman of the machine shop to repair all machinery, and that while keying up this engine at the time referred to, the engineer called his attention to the strap, and "wanted to know if it wasn't sprung. I told him no, that I thought the strap was all right; that it was simply worn a little." As to appellee's alleged conversation with him on the same subject the foreman says he does not recall it, but "it may and it may not" have occurred. From this evidence the jury were doubtless justified in concluding that there were indications the strap was so sprung that it did not fit close and tight upon the connecting rod; and that the foreman's attention was called to that indication before the accident. It was a fair question, therefore, for the jury to determine whether the foreman was guilty of negligence contributing to or causing the accident in that he failed to remove such parts of the boxing or machinery as might be necessary to disclose the actual condition of the strap, whether it was or was not in good order and condition for the work it was called on to perform. Actual knowledge of the extent and character of the defect is not necessary to create liability. It is sufficient if appellant might have known by the use of such diligence as the law requires. "No defect is latent which an inspection will disclose," hence appellant's officers will be "charged with knowing what an inspection would inform them of." Sack v. Dolese, 137 Ill. 129–133.

There is evidence tending both to support and contradict the view that the slight opening thus discovered between the connecting rod and the strap rendered the continued use of the "strap" in that condition dangerous. There was also evidence tending in the opinion of so-called experts to show that there was an old break or crack in the strap on

one side, at a place where it finally broke. While this evidence is not conclusive at all, it perhaps warranted the jury in believing that an examination, if made at the time when the opening between the "strap" and rod was discovered, might have disclosed such condition of the "strap" as would have led to its removal and prevented the accident. There was, it is true, some evidence which tended to account for the accident on the theory that it was caused by water in the cylinder, and not by any alleged defect in the strap. This theory is based upon a sound alleged to have been heard at or about the time of the break. It can, however, scarcely be regarded as more than a theory, since the broken strap is an indisputable fact sufficient itself to account for the accident.

Complaint is made of the conduct of appellee's attorney toward a witness under cross-examination. He was endeavoring to get the witness to answer "Yes" or "No" to a question which the witness protested he could not properly answer in that way without explanation or modification. Thereupon he was asked by appellee's attorney: "Why do you hesitate about answering these questions?" and upon objection by appellant's attorney that he had "not shown any hesitation at all," appellee's attorney said: "He has sat there backed up between this man and this company, and has persistently evaded my questions. Have you anything to conceal here, sir?" The court sustained an objection, and appellee's attorney then said: "Well, perhaps that remark should not have been made; I will withdraw any remark of that kind." He was right in this. The remark should not have been made. It was, so far as we can discover, without legitimate excuse. It was calculated, whether so intended or not, to prejudice the jurors against the witness and against the defendant in the suit as well, in a way not warranted by anything that had occurred. There was no evidence, so far as we can discover, of any intention on the part of the witness to conceal anything. Merely withdrawing a remark of that kind after objection sustained by the court does not necessarily undo the harm. Any undue

and improper advantage gained by such a remark, if such advantage is apparent or fairly inferable, may justify a reversal of a judgment on the ground that a fair trial has not been had. In the present case we are not asked to reverse on this ground and in consideration of all the circumstances do not consider it necessary to do more than express disapproval of the language complained of.

It is claimed that appellee assumed the risk. With this contention we cannot agree. The danger was not open and obvious. It was concealed, and what defect was apparent, while sufficient perhaps to put appellant on inquiry, was not so far as appears such as to indicate special danger to appellee. "Not only the defects but the dangers must be known" to the servant to create an assumption of risk. Consolidated Coal Co. v. Haenni, 146 Ill. 614; Union Showcase Co. v. Blindauer, 175 Ill. 325–327; North Chicago St. Ry. Co. v. Dudgeon, 184 Ill. 477–485. The question whether appellee's knowledge was such as to charge him with knowledge of the dangers as well as the defects is one of fact, settled adversely to appellant by the verdict and judgment of the Superior Court. (*Idem*, p. 485.) See also C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492–497–8.

While the damages allowed are fully adequate in our opinion, we are not at liberty under the evidence to hold that they are so excessive as to justify our interference.

The judgment of the Superior Court must be affirmed.

*Affirmed.*