Mrs. Ellen G. Vaughan, Administratrix, Appellee, v. Chicago Junction Railway Company, Appellant.

### Gen. No. 15,089.

1. MASTER AND SERVANT—*when duty of inspection urgent.* If old, rusty or worn appliances are placed in machinery, the duty of inspection becomes more obvious and urgent.

2. MASTER AND SERVANT—*what knowledge not essential to liability because of defective appliances.* "Actual knowledge of the extent and character of the defect is not necessary to create liability. It is sufficient if appellant might have known by the use of such diligence as the law requires. No defect is latent which an inspection will disclose, hence appellant's officers will be charged .with knowing what an inspection would inform them of."

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook county; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed June 16, 1910.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; JOHN D. BLACK and JOHN C. SLADE, of counsel.

DARROW, MASTERS & WILSON, for appellee; EDGAR L. MASTERS, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court rendered in favor of Thomas Tobin as administrator of the estate of Dennis Vaughan, deceased, alleged to have lost his life by reason of the wrongful act of the defendant company.

The declaration is in three counts and charges in substance that on April 30, 1904, the deceased was in the employ of defendant as a switchman; that he was standing upon the footboard in front of a switch engine operated by defendant; that it became the duty of defendant to provide him a reasonably safe place to stand; that appellant negligently permitted said place to be unsafe and dangerous; that it was defendant's duty to provide said switch engine with proper and suitable appliances so that persons rightfully on said engine could hold themselves in a safe manner; that defendant negligently failed to provide a safe and suitable handrail and permitted the appliances on the engine to become unsafe and dangerous, as defendant knew or in the exercise of ordinary care could have known, but which the deceased Vaughan did not know, and that while standing on the footboard of the engine holding on to said hand rail, he fell because of such defective condition and was killed.

There is evidence tending to show that the deceased, a man 43 years of age, had been in defendant's employ between eight and ten years, working two years of that time as a switchman. The forenoon of April 30, 1904, at about ten o'clock, the switch engine in question was running without cars attached toward certain cars which were to be switched. Another switchman named Gray was riding with Vaughan upon the footboard of the engine. Gray was standing on the righthand side or end of the footboard and Vaughan upon the lefthand side, both facing to the front in the direction in

which the engine was proceeding. Gray, it is said, spoke to
Vaughan with reference to what they were to do and then
jumped off and ran ahead in the discharge of his duties. It
then became necessary, because of a curve of the track at that
point, for the deceased to put himself on the righthand end of
the footboard, taking Gray's place, to enable him to see sig-
nals which Gray in front might give. Vaughan accordingly
made an effort to swing himself around the draw bar pro-
jecting a few inches over the footboard in front of the center
of the pilot beam of the engine. As he tried to do so, having
his hand on the hand rail extending across the front of the
engine just behind the men as they stood on the footboard,
the standard which supported said hand rail on the lefthand
side of the engine and was nearest to Vaughan parted from
the bolt by which it was attached to the pilot beam and that
left end of the hand rail swung forward and outward on the
righthand standard as a pivot, causing Vaughan to fall for-
ward on the track in front of the engine. He was rolled
under the footboard and received injuries causing his death.

It is contended in behalf of defendant that the accident was
due to a condition which could not be discovered by a rea-
sonably careful inspection, that defendant made use of the
only proper inspection and was guilty of no negligence.
There is evidence tending to show that the standard or column
which parted from the bolt by which it was attached to the
oak pilot beam, and so caused Vaughan to be thrown forward
under the engine, was put in place there on February 11,
1904, seven weeks before the accident. It is claimed in behalf
of plaintiff and not denied, that the bolt was an old one when
so put in, and the condition of the bolt seven weeks later, after
the accident, when the threading was found to have been de-
fective, tends to substantiate such contention. If old or rust-
ed or worn when put in, the duty of careful inspection was
all the more obvious and urgent. "The law will imply and
infer notice of any defect which by the exercise of ordinary
care might have been known to the master." Missouri Mal. I.
Co. v. Dillon, 206 Ill. 145–152. The "duty of inspection
rests upon the employer and not upon the employe, and de-

pends upon the character of the machinery or appliance, since ordinary care may require inspection oftener in one place than another." Wrisley v. Burke, 203 Ill. 250–257. "This duty was a positive one owing by the defendant to the plaintiff." C. & A. R. R. Co. v. Walters, 217 Ill. 87–92. The appliance was simple. No complaint is made as to its form, but that it was allowed to become so defective that when the deceased trusted his weight to it, it gave way without notice. There is evidence tending to show the hand rail appeared to casual observation to be safe. It had apparently been in use as usual that morning before the accident. As we said in Libby v. Cook, 123 Ill. App. 574–578, "Actual knowledge of the extent and character of the defect is not necessary to create liability. It is sufficient if appellant might have known by the use of such diligence as the law requires. No defect is latent which an inspection will disclose, hence appellant's officers will be charged with knowing what an inspection would inform them of."

In Rogers v. C., C., C. & St. L. Ry Co., 211 Ill. 126–131, is a quotation from 152 Ill. 458–461: "It is the duty of the Company to exercise reasonable and ordinary care and diligence in providing and keeping in repair reasonably safe machinery and appliances for the use of its servants; and this is a continuing duty requiring the Company to exercise reasonable diligence and care in supervision and inspection." The deceased had a right to rely on the proper performance of that duty by the defendant. It is said that an engineer went over the engine morning and evening, and had discovered nothing wrong about it. That kind of inspection failed to disclose the rusting of the screw and threads within the bolt, and could not reasonably be expected to. The engineer testifies that "about all a man can do in inspecting an engine is to walk around it and see that she is all there, that there aren't any broken parts;" that he "would take hold of the rods or take hold of any other parts I could reach handily and shake them." He testifies that "all of our bolts when they have been in an oak beam a short time get in that condition,"

that is rusted "by the acid in the wood." Such conditions then could be reasonably anticipated in this case.

Defendant's counsel urge that "the appliances came apart because of the stripping of the thread inside of the single piece of iron or standard, and the condition inside the standard was not discoverable from the inspection made nor from any test known to appellant." There is testimony however tending to show that, assuming the bolt to have been in the same condition it was when produced in evidence, "the hammer test would detect any weakness whatever. There is a stripped condition inside the column. Stripping usually occurs suddenly if it is a perfect fit." There is other testimony tending to show in effect that, "assuming that the bolt was put through a beam and projected above the beam and was inserted in a standard, and assuming that it was solid in the beam, the condition apparent there now in regard to the bolt and standard could have been ascertained by the hammer test;" and further that the condition of those parts was not "caused by the weight of one man using it off and on for six weeks or two months;" that "the fact the handhold had held a man's weight continuously several times a day for a period of two months without showing any sign of weakness" would not be considered a good test. There is conflict in the evidence as to whether the defective condition was or was not discoverable by proper tests. The fact remains however that the bolt and upright which gave way had become rusted and some of the threads were worn out at the time of the accident. This condition apparently was not discoverable by such tests as defendant had applied to the hand rail before the accident, but there is evidence tending to show it might have been discovered by other and more thorough going methods of inspection. The defect was not on the surface, but it does not follow, as defendant's counsel claim, it was not discoverable by reasonable inspection such as the conditions required. It may be, as is claimed, that the defective condition "could not have been discovered except by unscrewing the standard and looking at the inside." Even so, it was a question for the jury whether in a case of this kind the duty to use reasonable

care to keep the appliance in a fit condition did not, as said in C. & E. I. R. R. v. Snedaker, 223 Ill. 395–405, "require inspection at reasonable intervals and the employment of such tests as will reveal the condition of the machinery or appliances." The tests made were clearly not such as to "reveal the condition of the machinery or appliances." We think the jury were warranted by the evidence in concluding that the accident resulted from negligence in this respect; that an appliance of this character, upon which switchmen in the daily performance of their accustomed duties were obliged to rely for the safety of their lives, may fairly be deemed to require of the defendant in the exercise of reasonable care a much more thorough inspection than the evidence shows was used in the case at bar.

Finding no material error in the record, the judgment of the Circuit Court will be affirmed.

*Affirmed.*