# CHARLESTON.

## State v. E. J. (Tim) Taylor

### (No. 6043)

Submitted February 28, 1928.   Decided March 6, 1928.

1. Criminal Law—*Defendant May Not Complain of Instruction as to Higher Degree of Crime Where Jury Convicts of Lower Degree as to Which They Were Properly Instructed.*

   The general rule is that where a crime is divided into degrees, if the court commits error in instructing the jury as to the higher degree of such crime, and they return a verdict of guilty of the lower degree, as to which they were properly instructed, the defendant cannot complain.   (p. 300.)
   (Criminal Law, 17 C. J. § 3700.)

2. Assault and Battery—*Instruction That if Assault and Battery With Dangerous Weapon Was Not Malicious, to Convict of Unlawful Wounding, Held Sufficient to Warrant Finding of Unlawful Wounding (Code, c. 144, § 9).*

   An instruction to the jury that if they believe from the evidence beyond a reasonable doubt that the defendant, on the day laid in the indictment, maliciously and unlawfully assaulted and beat the prosecuting witness with a dangerous weapon with intent, then and there to maim, disfigure, disable and kill him, then the jury should find the defendant guilty of malicious wounding as charged in the indictment; "but if they believe from the evidence that the act was done unlawfully, but not maliciously, then the jury should find the defendant guilty of unlawful wounding as charged in the indictment," is sufficient to warrant a finding of "unlawful wounding," on an indictment under section 9 of chapter 144 of the Code.   (p. 301.)
   (Assault and Battery, 5 C. J. § 346.)

3. Same—*To Support Finding of Unlawful Wounding Under Statute There Must be Intent to Produce Permanent Disability or Disfigurement (Code, c. 144, § 9).*

   To support a finding of unlawful wounding under section 9 of chapter 144 of the Code, there must be intent to produce a permanent disability or disfiguration.   (p. 302.)
   (Assault and Battery, 5 C. J. § 220; Mayhem, 40 C. J. § 9.)

4.  CRIMINAL LAW—*In Determining Weight of Testimony, Jury
    Should Consider Witness' Interest; Instruction That Jury
    Should Weigh Defendant's Evidence as That of Any Other
    Witness Held Not Improper for Failure to Call Attention
    to Defendant's Interest.*

    While the rule is that in determining the weight to be
    given the testimony of any witness, the jury should take into
    consideration his interest in the issue involved, an instruc-
    tion offered by the defendant on his competency to testify in
    his own behalf which tells the jury that it is their duty "to
    weigh and consider his evidence the same as that of any
    other witness and give to his evidence such weight and credit
    as they think the same is entitled to and to weigh his evi-
    dence under the same rules as they weigh the evidence of
    other witnesses testifying in this case," is not improper be-
    cause of failure to call the attention of the jury to the de-
    fendant's interest in the result of the case, and should be
    given when requested.    (p. 305.)

    (Criminal Law, 16 C. J. §§ 2291, 2444.)

5.  SAME—*Persistent Efforts to Introduce Improper and Preju-
    dicial Evidence After Court Has Ruled Against it is Not
    Wholly Cured by Instructions to Disregard it.*

    The effect of the persistent efforts of counsel on the trial of
    a case to introduce improper and prejudicial evidence, after
    the trial court has ruled on its illegality, is not wholly cured
    by instructions to disregard it.    (p. 306.)

    (Criminal Law, 16 C. J. § 2271.)

6.  SAME—*Opinion Wound Could Have Been Caused by Fall on
    Rock Held Inadmissible Without Evidence of Surroundings.*

    Opinion evidence of an expert is properly rejected where
    there is no evidence in the record to support such conclusion.
    (p. 306.)

    (Criminal Law, 16 C. J. § 1532.)

    (NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not
    part of syllabi.)

Error to Circuit Court, Nicholas County.

E. J. (Tim) Taylor was convicted of unlawful wounding,
and he brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Howard B. Lee,* Attorney General, and *W. Elliott Nefflen,*
Assistant Attorney General, for the State.

*Osenton & Lee,* for plaintiff in error.

MILLER, PRESIDENT:

The defendant was tried and found guilty of unlawful wounding, on an indictment, the first count of which charged that he and his brother William S. Taylor, at the time and place named, "did unlawfully combine, conspire and confederate together for the purpose of inflicting punishment and bodily injury upon one A. J. Brewster and in pursuance to said combination, conspiracy and confederacy, on the day and year aforesaid, in the county aforesaid, with malice aforethought feloniously and unlawfully in and upon A. J. Brewster did make an assault,. and did then and there feloniously, wilfully, deliberately and unlawfully strike, beat, cut, bruise and wound the said A. J. Brewster, with intent him the said A. J. Brewster to maim, disfigure, disable and kill," etc. The second count, after charging conspiracy as in the first, alleges that the said defendants "feloniously, wilfully, deliberately and unlawfully did strike, beat, cut, bruise, wound and inflict punishment and bodily injury upon the said A. J. Brewster," etc. The court refused to require the State to elect upon which count it would rely for conviction.

It is contended by counsel for defendant that the first count in the indictment is not good as one for malicious maiming, that while it charges that the defendant with malice aforethought made an assault upon the prosecuting witness, it does not allege that he maliciously committed the acts done in pursuance thereof; and that, therefore, it was error to refuse defendant's instruction offered, that he could not be found guilty of malicious wounding under this count, and to give to the jury the State's instruction, that he might be found guilty of malicious wounding, if the jury believed the acts complained of were done maliciously.

While the indictment does not charge that the acts constituting the offense were maliciously done, it is alleged that the assault was committed with malice aforethought, and that the acts complained of were done with intent to maim, disfigure, disable and kill the prosecuting witness. Whether or not the indictment was sufficient to support a verdict of malicious wounding, we have held: "The general rule is that

where a crime is divided into degrees if the court commits error in instructing the jury as to the higher degree of such crime, and they return a verdict of guilty of the lower degree, as to which they were properly instructed, the defendant can not complain." *State* v. *Watson,* 103 W. Va. 482, and authorities cited. Here, the defendant was found guilty of unlawful wounding, as to which offense the jury were properly instructed.

Error is assigned in the giving of State's instruction number two, as follows: "The court instructs the jury that even though you may believe from the evidence in this case that no conspiracy existed between the defendant and W. S. Taylor to inflict bodily injury upon the said A. J. Brewster, yet if you believe from the evidence beyond a reasonable doubt, that the defendant E. J. (Tim) Taylor on the ............ day of September, 1926, maliciously and unlawfully assaulted and beat the prosecuting witness, A. J. Brewster, with a dangerous weapon of any kind, and wounded him with said weapon with intent, then and there to maim, disfigure, disable and kill the said A. J. Brewster, then the jury should find the defendant guilty of malicious wounding as charged in the first count in the indictment in this cause; but if the jury believe from the evidence that the act was done unlawfully, but not maliciously, then the jury should find the defendant guilty of unlawful wounding as charged in the first count in this indictment."

In addition to the objection to this instruction above disposed of, it is said that the second part, as to the offense of unlawful wounding, omits entirely the question of intent. The statute upon which the indictment was based, section 9, Chapter 144 of the Code, is:

"If any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be punished by confinement in the penitentiary not less than two nor more than ten years. If such act be done unlawfully, but not maliciously, with the intent aforesaid, the offender

shall, at the discretion of the court, either be con-
fined in the penitentiary not less than one nor
more than five years, or be confined in jail not ex-
ceeding twelve months, and fined not exceeding
five hundred dollars.''

It will be noted that the instruction does not, in the second part, contain the expression ''with the intent aforesaid,'' or words of like meaning. It is contended that as the instruction was given, the jury would be warranted in finding the defendant guilty of unlawful wounding without finding that the act constituting the offense was done with intent. The instruction must be read as a whole. To make the part relating to unlawful wounding mean anything, the jury must necessarily consider the whole instruction. The only effect of the latter part was to strike out the word ''malicious'' before the word ''wounding''. No other part of the first clause of the instruction could possibly be changed or disregarded. Some parts of the first clause being necessary to complete the second, the jury could not arbitrarily disregard any part thereof, except to substitute ''unlawful'' for ''malicious''.

The court refused at the request of the defendant, to instruct the jury that the words ''maim, disfigure and disable'' as charged in the indictment mean a *permanent* maiming, disfigurement, and disabling. Mayhem at the common law is defined as the violently depriving another of the use of such of his members as may render him less able in fighting to defend himself or to annoy his adversary. *State* v. *McDonie,* 89 W. Va. 185; 4 Blackstone, p. 205; 3 Chitty Crim. Law, p. 784; 1 Hawkins P. C., p. 175. Early English statutes enlarged the common law offense, to extend to cutting out or disabling the tongue, putting out an eye, slitting the nose, cutting off the nose or lip, with the intent to maim or disfigure another. But the gist of the offense has always been intent of the assailant to ''disable'' the adversary, though in some jurisdictions, it has been held that a disfiguring such as will attract observation or impair comeliness may be shown. 8 R. C. L. 304; 2 Brill Enc. Crim. Law, 1366; 40 C. J. 7.

The question raised by defendant's instruction is: Must the intent be to maim, disable or disfigure the adversary

permanently? In the Virginia case of *Vawter* v. *Commonwealth,* 87 Va. 245, it is said that such an instruction is right as an abstract proposition of law; but there was no certificate of the facts or the evidence before the court on which to consider the instruction, and for the reason it was held not error to refuse the same. The case of *Lee* v. *Commonwealth,* 135 Va. 578, was reversed for the action of the trial court in striking from a similar instruction the word ''permanently'', the court saying: ''If we could say that the jury accepted the commonwealth's theory in its entirety and believed that Lee followed Bonewell after he had withdrawn from the fight and dealt him a blow with a sharp instrument like a knife or steel knuckles, we would readily hold that there was no error in refusing the instruction as asked. Men are presumed to intend the natural and probable consequences of their acts, and a permanent disfigurement would be the natural and probable consequences of a violent blow on the face with such a weapon. But it may be the jury believed that although Bonewell had withdrawn and that Lee did follow and strike him in retreat, he used no instrument but his fist. None of the witnesses even for the commonwealth saw any weapon of any kind in his hand, and the theory of the commonwealth in this particular depends entirely upon the expert or opinion evidence of the physician. If Lee only used his fist, then there would be no presumption from that fact alone that he intended to permanently disfigure his adversary, and yet some disfigurement would naturally be expected, and would almost necessarily follow, from such a blow. The word 'disfigure' in the maiming statute under which this indictment was found, means a permanent and not merely a temporary and inconsequential disfigurement. *Vawter's Case,* 87 Va. 245, 12 S. E. 339; 1 Russ. Cr. 598; 26 Cyc. p. 1600.'' The facts here are similar to those in the *Lee* case. The prosecuting witness, Brewster, was seated on a horse; the defendant was standing on the left side of the horse, either holding to the bridle with his left hand or with that hand on the horse's neck. Brewster says Taylor struck him over the right eye ''with something here and cut a scar—gash—just split my skin to my skull clean down to my eye here, knocked me

off my horse, then run around, jumped on me and choked me, pounded me and beat me up.'' When asked what defendant did after he fell from the horse, Brewster answered: ''He beat me up with his fist. He never hit me with whatever weapon, whatever it was, but the one time. It was dark; I couldn't see what it was.''. The defendant insists that he only hit Brewster with his open hand or fist, and did not do that until Brewster began kicking him on the collar bone, and says that Brewster attacked him with a knife'after falling from the horse. The physician who dressed Brewster's wound, taking seven or eight stitches in it, testified that in his opinion the wound could not have been caused by a blow with the fist, that it was a ragged cut, which he felt sure was not made with a knife. There is no evidence of any scar at the time of the trial, though the physician testified that the gash in one place was cut down to the skull. But the character of the wound or the permanency of the scar is not the test.

Can we infer from the character of the attack that the defendant intended to disfigure his adversary permanently? No one saw a weapon. Brewster testified that defendant hit him with ''something besides his fist'', ''because I could tell by the way it hit—the way it cut.'' It appears that Brewster fell from the right side of his face. Defendant's theory is that the gash was cut by striking some hard, rough object on the ground, though no evidence was offered to show the character of the road bed at the place, but it does appear to have been unimproved and unpaved. Whether or not a weapon was used, and if·so its character, became a question for the jury; and the intent with which the assault was made must depend on the character of the weapon as well as upon the other facts in evidence.

In an early English case, *Rex* v. *Boyce,* 1 Moody C. C. 29 (1824), tried after the enactment of 43 Geo. 3, ch. 58, enlarging the scope of the common law offense of mayhem, ''the prisoner was tried before Thomas Denman, Esquire, Common Sergeant, at the Old Bailey Sessions, June 1824, upon an indictment for feloniously cutting and maiming John Fishburn, with intent to murder, maim and disable. There was no count

which charged an intent to prevent his lawful apprehension. The facts were these: The prisoner had, in the night time, broken into a shop in Fleet Market, and was there discovered by the prosecutor, who was a watchman, at a quarter before five in the morning of the 11th of April, 1820. On the prosecutor entering the shop for the purpose of apprehending him, the prisoner struck him with his fist, which blow the prosecutor returned. The prisoner then said, 'I will serve you out —I will do for you;' and, taking up a crow bar, struck the prosecutor with it two severe blows, one on the head, the other on the arm; he then ran away, ordering the prosecutor to sit on a block in the shop, and threatening that it would be worse for him if he moved. The crow bar was a sharp instrument, and the prosecutor was cut and maimed by the blows so given with it by the prisoner. The prisoner was found guilty; and, on an answer to a question from the Common Sergeant, the jury said, 'we find that he was there with intent to commit robbery, and that he cut and maimed the watchman with intent to disable him, till he could effect his own escape.' The Common Sergeant reserved the case for the consideration of the judges. In Trinity Term 1824, all the Judges (except Braham, B. and Garrow, B.) met, and considered the case, and held the conviction wrong, for, by the finding of the jury, the prisoner intended only to produce a temporary disability, till he could escape, not a permanent one." And, generally it is held that the statute contemplates intent to produce a permanent disability or disfiguration. 40 C. J. 7; 8 R. C. L. 304.

We are of opinion that the trial court, in refusing the instruction offered, committed error prejudicial to the defendant.

The court refused to instruct the jury that "the defendant, C. J. Taylor, had the right to testify in his own behalf and the jury have no right to arbitrarily disregard or disbelieve his evidence in whole or in part merely because he is on trial charged with a crime, but it is the duty of the jury to weigh and consider his evidence the same as that of any other witnes and give to his evidence such weight and credit as they think the same is entitled to and to weigh his evidence under

the same rules as they weigh the evidence of other witnesses testifying in this case." We think this instruction should have been submitted to the jury. *tate* v. *Galford,* 87 W. Va. 258; *State* v. *Stafford,* 89 W. Va. 301; *State* v. *Hurst,* 93 W. Va. 222; *State* v. *Koski,* 100 W. Va. 98. It may be that the trial court thoughth the phrase, "to weigh his evidence under the same rules as they weigh thee vidence of other witnesses", took from the jury consideration of defendant's interest in the issue involved; but in every case where there is conflicting evidence, the jury must believe one witness and disbelieve another, and in determining what testimony is true, they necessarily have to take into consideration the witnesses' motives as well as their viewpoint.

On cross-examination of one of defendant's character witnesses, counsel for the State inquired: "You knew, didn't you, that he had been separated from his wife and had been living over there in an adulterous condition with another woman in your town, or did you know that?" Before the court could rule on objection to the question, the witness answered: "I did not." The court instructed the jury that the question was improper. But counsel persisted in making similar inquiries of three other witnesses immediately following the ruling of the court on the first question. This practice has been severely condemned by this Court in a number of cases, and should be discontinued. *Christie* v. *Mitchell,* 93 W. Va. 200; *Moorefield* v. *Lewis,* 96 W. Va. 112; *State* v. *Morris,* 96 W. Va. 291. In the latter case it was said: "The persistent effort to introduce improper and prejudicial evidence, in spite of the rulings by the court of its illegality, can only be for the purpose of prejudicing the jury, and is not wholly cured by instructions to disregard it.

Counsel for defendant offered to show by the physician who dressed Brewster's wound, that in his opinion the gash could have been made "by a person falling off a horse and striking his head against a rock in the road." There was no evidence of the character of the road bed where Brewster fell; and we can not say that the rejection of this evidence was prejudicial. Regardless of the opinion of the physician, the jury were

competent to draw conclusions as to the cause of the wound from all the evidence before them.

For the error above set out, the judgment will be reversed, the verdict set aside, and the defendant awarded a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*