416

Agnes Franko, Administratrix of the Estate of Martin Virant, Deceased, Appellee, v. James J. Crosby, Appellant.

Gen. No. 8,838.

418

Opinion filed January 17, 1935.

CLARENCE W. HEYL, of Peoria, and JESSE BLACK, JR., of Pekin, for appellant.

MICHEL & WESNER, of Peoria, for appellee.

MR. JUSTICE HUFFMAN delivered the opinion of the court.

This was an action brought by appellee under the Injuries Act, Cahill's St. ch. 70, ¶ 1 *et seq.*, to recover damages for the next of kin of Martin Virant because of his alleged wrongful death. The appellant was the sheriff of Tazewell county. Trial resulted in a verdict in favor of appellee for $5,000, and this appeal is prosecuted from the judgment of the court upon the verdict.

The deceased, Martin Virant, lived with appellee, his sister, and her husband Frank Franko, together with his brother, Frank Virant. These parties had lived together in the home of Frank Franko for a number of years prior to the death of the deceased. On August 30, 1932, the deceased was arrested in connection with the murder of one Louis Nelan. He was taken to the sheriff's office in the courthouse in the City of Pekin, in Tazewell county, where he was questioned and where the officers attempted to take his fingerprints. He refused to submit to having his

fingerprints taken and was thereafter taken to the county jail. On the following day, he was again taken to the sheriff's office and questioned by the State's attorney. He again refused to submit to having his fingerprints taken. He was returned to jail. On the evening of August 31, he was taken to the Kuecks Funeral Home in Pekin, to attend the inquest over the body of the said Louis Nelan. Following this, he was returned to jail. On the following day, September 1, at about 2 or 2:30 o'clock in the afternoon, the sheriff (appellant herein), pursuant to instructions from the State's attorney, directed deputy sheriff Skinner to go to the jail and release Martin Virant. The appellee and Mr. Michels, one of her attorneys herein, were at the sheriff's office and accompanied the deputy to the jail. They remained in the jail yard while the deputy entered the jail for the purpose of releasing the prisoner.

The evidence discloses that the deputy, upon entering the cell of Martin Virant, found him suspended by his neck from the top bars of his cell, by means of his leather belt. The coroner was immediately called and arrived within a very few minutes. The deceased was taken down by the coroner and efforts were made to resuscitate him. These efforts were unsuccessful. It is the contention of appellee that the deceased came to his death as the result of external violence inflicted upon him by the appellant, his deputies and agents. Appellee contends that deputy sheriff Skinner, upon going to the cell of deceased, found him dead from such alleged violence, took the deceased's belt, placed it about his neck in the above manner, and suspended him thereby from the top bars of his cell. It is the contention of appellant that the deceased came to his death by his own act in hanging himself with his belt in the above manner.

The evidence of the coroner discloses that the body of the deceased was warm at the time he arrived, and

that he applied artificial respiration until an artificial breather could be secured, at which time he used this in an effort to resuscitate the deceased. The evidence of the coroner was to the effect that the deceased did not come to his death by hanging, and that there were no physical manifestations present which accompany death in this manner. The coroner's evidence further disclosed that the deceased had a discolored and swollen right ear of recent injury; that the discolored area extended back of the ear and down the neck to the shoulder, and was about three inches in width; that there was an abrasion on the back of the skull; that both eyes were discolored; that there were extensive injuries to both sides above the hip bone; that on the right side was an area of discoloration seven and a half inches by four inches; that on the left side was a like injury but not so extensive; that both elbows were injured and discolored; that the shin bones disclosed a discolored area about three inches below the knees; and that there was a discolored area on the chest. An autopsy was performed in the presence of the coroner by two other doctors. A second autopsy was performed by Dr. McNally of Chicago, an assistant professor of medicine in Rush Medical College. He had been connected with the coroner's office of Cook county for 17 years, during which time he performed many post mortems and examined the organs of 11,000 people. The results of the post mortems, as reflected by the testimony of the doctors performing same, corroborates the evidence of the coroner. It was found that on the right side of the head and to the back thereof, was a wound which had caused an extensive hemorrhage in the cranial tissue back of the right ear. It also appeared that the muscles and tissue of the back and sides of the deceased were hemorrhagic due to external violence. The evidence of the coroner and these physicians was to the effect that the above described injuries were received by the deceased be-

fore his death, and that his death was due to shock and hemorrhage resulting from such injuries.

It is not maintained by appellee that the appellant in person committed any of the acts of violence charged, but it is urged that the same were committed by certain of his deputies and particularly by deputy Skinner. There is nothing in the evidence to disclose how or when the deceased received the injuries alleged to have caused his death. It does appear however that he did not have such injuries upon his person at the time of his arrest. The sheriff's deputies who had the deceased in charge at the various times mentioned deny the above acts of violence, and deny that any acts of violence were committed by them upon the deceased. It does not appear that the sheriff personally had anything to do with the deceased, except to examine him at his office in the courthouse. It is claimed by appellant that the deceased sustained the injuries by attempting to hang himself in his cell with strips cut from his mattress; that these strips were not strong enough and broke, letting the deceased fall to the iron floor of his cell, thus sustaining the bruises and injuries. The evidence discloses that strips had been cut from the covering of the mattress and tied to the bars at the top of the cell. The ends thereof remained hanging from the bars where they were tied. A prisoner directly below the cell of the deceased testified that on the night previous to the finding of the deceased by the deputy he heard several noises as though the said Martin Virant was falling down upon the floor. The floor separating these cells was immediately above this witness and close enough that when sleeping in the upper bunk, his knees, if raised, would touch the floor. The evidence discloses that the deceased on the evening of August 31, when being taken from his cell for the purpose of attending the inquest, made an effort to escape and in running down the stairway toward the door, met officer Rickey, a

policeman from Peoria, standing at the door waiting to see some of the officers. Officer Rickey saw no marks on the man at that time. It is claimed by appellant that none of the deputies was at the cell of the deceased at any other times than those above mentioned, and the evidence fails to disclose any other visits to the cell of deceased by any of such officers.

It is urged by appellant that the evidence does not support the verdict and that the trial court erred in refusing to instruct the jury to return a verdict for appellant. The questions involved in the trial of this case were questions of fact. It is for the jury to weigh and determine the evidence. They see and hear the witnesses and have a superior advantage over a reviewing court in determining the credibility of the witnesses and the weight that should be given their testimony. Verdicts of juries should not be disturbed when there is evidence to support the same, in the absence of other errors intervening.

Appellant also objects to the instruction given by the court on behalf of appellee. This instruction was in relation to the element of damages. We do not discover any error in the instruction. It appears to be designed after a similar instruction approved by this court in the case of *Mugaviro v. Chicago, B. & Q. Ry. Co.*, 239 Ill. App. 544, at page 549.

It is urged by appellant that the verdict is excessive; that the records of the coal mining companies where the deceased, his brother Frank Virant, and the husband of appellee worked disclosed that the brother of deceased and appellee's husband each made more money than the deceased. The evidence shows this to be a fact, yet appellee testifies that the deceased had lived in her home for several years and that he gave her from $10 to $15 each week. It is argued by appellant that the husband of appellee and the next of kin having a greater income than the deceased, and also having a sufficient income upon which to live, any as-

sistance from the deceased was not necessary; and therefore no verdict should be sustained in this case for more than nominal damages, the next of kin being collateral. The rule that the presumption of substantial damages results to the parents of a minor child, or to the immediate next of kin, by the wrongful death of a parent, does not extend to the collateral next of kin such as brothers and sisters. As to them, no presumption exists that they suffered more than nominal damages. However, this presumption exists only in the absence of proof to the contrary. There was evidence in this case by the sister (appellee herein), and by the brother, Frank Virant, that the deceased contributed a portion of his earnings to them for their support. Damages to the collateral kindred, other than nominal damages, are only such actual damages as are proved. The fact that the next of kin of the deceased possessed their own earning power is not controlling in the presence of positive evidence that the deceased did regularly contribute to their support. In cases of this kind, no rule can be laid down concerning frugality and economy. If the fact be that the decedent's brother and sister depended in part upon his contributions, and that he made same, then under such circumstances they are entitled to recover more than nominal damages.

Appellant urges the reversal of this case because of misconduct of counsel for appellee during the trial thereof. Judicial proceedings should be conducted in such manner as is consistent with due respect for the orderly administration of law and justice.

Occasional unguarded remarks are not to be unexpected in prolonged and heated trials. However, the persistent over-indulgence in such may demand a reversal when otherwise the same might not have been deemed necessary. When arguing within the limits of admitted or controverted facts, counsel should enjoy the greatest latitude consistent with decorum and a

reasonable ambition to succeed by honorable means, but they should keep within the evidence and when attacking a witness, should not use language that is not justified by the record. Uncalled-for personal abuse by counsel of witnesses, whether during the course of examination or in argument before the jury, when calculated to inflame the passions of the jury, and materially prejudice the case adversely to the rights of the complaining party, will in proper cases afford grounds for reversal. *Libby, McNeill & Libby v. Cook,* 123 Ill. App. 574, 579.

In the trial of a case, attorneys should not persist in disregarding the admonitions of the trial judge. Neither should they indulge in remarks of material character that are so grossly unwarranted and improper as to be clearly injurious to the opposite party. Attorneys should not persist in arguing and in making statements to the jury about facts not in evidence or such as have been rejected as incompetent. Argument of counsel should be for the purpose of assisting the jury to fairly and impartially arrive at the facts submitted to them for their decision. It is improper for counsel in their argument to indulge in personal abuse and inflammatory remarks calculated to arouse the passions and prejudices of the jury against the defendant, and which throw no light upon the questions for decision. *People v. Bimbo,* 314 Ill. 449, 454; *People v. Chrfrikas,* 295 Ill. 222, 227–229.

The record in this case contains evidence of such persistent efforts to appeal to the passions and prejudices of the jury as cannot be reconciled with any other intent than to arouse the passions of the jury and inflame their minds against the defendant. This conduct continued throughout the trial and argument. Efforts of attorneys to obtain verdicts by such means cannot be sanctioned. Under such conditions, unless it can be seen that it did not result in injury to the defendant, the judgment should be reversed. *Wabash*

*R. Co. v. Billings,* 212 Ill. 37, 41. Intemperate language, vituperation, and the expression of the personal opinion of attorneys, outside of the record, have no place in the argument of a case to the jury.

Appellee's attorneys argue that since the verdict is for but $5,000, it does not indicate it was the result of passion and prejudice, and thus refutes any presumption that their conduct and remarks aroused or inflamed the minds of the jury against the defendant. We have no way of determining this fact. It would be mere conjecture for us to attempt to do so. Had the attorneys not indulged in such remarks and conduct, it might then be urged that the verdict standing alone did not indicate that it was the result of passion and prejudice; but here, the verdict was returned after a trial lasting from the 21st to the 29th day of May, where the bitterest feeling was manifest throughout, and a course of conduct employed calculated to inflame the minds of the jury and arouse their passions and prejudices against the defendant. Under such circumstances, we are unable to say that the verdict was not affected thereby.

Improper argument may be effective in arousing prejudice and passion on the part of the jury notwithstanding the fact that objections thereto are sustained by the trial court. *Chicago Union Traction Co. v. Lauth,* 216 Ill. 176, 184. The remarks of counsel for appellee in this case and the course of trial were not such as to assist the jury fairly and impartially to arrive at the facts submitted to them for their decision. The argument that the amount of the verdict does not indicate improper motives on the part of the jury does not serve to obviate the objections urged by appellant. There is no way to determine what the jury would have done under different circumstances than those which existed upon this trial.

After a long and careful examination of the record, we are convinced that a deliberate attempt was made

by appellee's attorneys to inflame the minds of the jury against the defendant. To quote or discuss the remarks made by counsel for appellee during the trial and to which appellant objects, would occupy too much space and serve no good purpose.

Under conditions such as the foregoing, this court is of the opinion it becomes necessary to reverse and remand this case, unless it can be seen from the record, that the defendant received a fair trial. Such does not appear.

The law provides but one mode of trial for both the innocent and the guilty. The judgment of the circuit court of Peoria county is reversed, and this cause remanded for a new trial.

*Reversed and remanded.*