STATE OF WEST VIRGINIA *v.* CLARK LOUIS GRAHAM

(No. 8562)

Submitted May 12, 1937. Decided June 15, 1937.

 

*J. Raymond Gordon* and *Frank Lively,* for plaintiff in error.

*Clarence W. Meadows,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for the State.

RILEY, JUDGE:

At the June Term, 1936, of the Circuit Court of Putnam County, the defendant, Clark Louis Graham, was indicted for rape with force and arms on one Helen Eubanks. He was tried, convicted and sentenced to serve fifteen years in the penitentiary.

The defendant is fifty-six years of age and a resident of Montgomery, West Virginia. About noon, on May 25, 1936, he went to the home of Mrs. Elizabeth Eubanks near Guthrie, two and one-half miles from the corporation limits of the City of Charleston on U. S. Route 25. The evidence offered on behalf of the state was to the effect that he told Mrs. Eubanks that his name was "Mr. Gum"; that he lived at Spring Hill (east of St. Albans on Route 60) ; that his wife had a fractured or badly sprained ankle and was in the hospital; that Ruth Patton (Mrs. Eubanks' niece) had directed him to her; that he wanted her youngest girl, the prosecutrix, Helen Eubanks, aged twelve years and nine months, to help in his home; that he would pay her four dollars and fifty cents a week; and that he didn't want Rhoda Eubanks who was twenty-two years old because his wife could train the younger girl better.

It appears that the defendant and prosecutrix left the Eubanks home in a Dodge sedan about noon, and then went to a store at St. Albans where the defendant purchased the prosecutrix shoes and stockings. From there, he drove west on the Huntington Pike (U. S. No. 60) and turned off to the left on a dirt road known as Trace

Fork Road (two miles east of Hurricane), which was under construction. When about two and one-half miles from the intersection with the Huntington Pike, defendant stopped the car at a sparsely settled place on the road located in Putnam County where the alleged misconduct was claimed to have taken place.

Prosecutrix testified that the defendant made her get into the rear seat of the car; that she was afraid not to; that he then pulled her down and had relations with her. She was then in her menstrual period. She testified that she began to cry and begged the defendant to stop. According to her testimony, the defendant, on the way back on Route 60, drove past a house at Spring Hill where he said he lived, but did not stop there because there were no lights. The defendant testified that he drove back to Charleston, where he discharged the prosecutrix for some time and then took her back to her home. She arrived home about ten-thirty that night.

Doctor James E. Roberts of Charleston, who examined the prosecutrix on the following day, found that she had had recent sexual intercourse; and that there were stains of blood on her female organs and underclothing next to her body. Whether these stains came from her menses is undisclosed. The doctor further testified that there were no marks on the outside of her body showing violence; that he would not say that this was her first act of intercourse; and that her female organs were a little above the average in development.

The prosecutrix testified that she never had had sexual intercourse before her alleged relations with the defendant. One witness, however, testified that he saw his brother in bed with her in April, 1935. Edward Gilfillen, a witness for defense, testified that on one night more than a year before the trial he had slept with the prosecutrix at Mrs. Tom Harmon's home, and on that occasion had had relations with her. Upon rebuttal, Mrs. Harmon testified that at no time had the prosecutrix been at her home with Gilfillen.

The defendant testified that he drove with the prosecutrix to St. Albans, which is situated between the prose-

cutrix' home and Trace Fork Road, for the purpose of arranging for the use of two trucks which he owned, and that he went down on Trace Fork Road to see if the contractor on that road had his own trucks. He denied ever having sexual intercourse with the prosecutrix and that. he represented himself to Mrs. Eubanks as "Mr. Gum." In a number of particulars, he contradicted the two members of the State Police who testified as to certain alleged statements which the defendant made to them at the time of and after his arrest.

The first assignment of error is that the evidence is insufficient to show that the defendant had relations with the prosecutrix by force and against her will. The original warrant under which he was arrested was based upon statutory rape. However, he was indicted and tried on the theory of rape with force and arms. Whether or not the defendant had carnal knowledge of the prosecutrix against her will is purely a jury question which was solved in favor of the state.

On this question, the evidence introduced on behalf of the state is sufficiently strong for a jury to find that the presumption of innocence in favor of the defendant was overcome. Under the circumstances, we are not at liberty to disturb the verdict on the ground cited under this assignment of error. *State* v. *Barkoski,* 96 W. Va. 265, 122 S. E. 654.

During the course of the trial, the prosecuting attorney made repeated efforts to blacken the defendant's character. These efforts, in part, were made before the defendant had undertaken to put his own character in evidence. The state is not at liberty to impeach the character of a defendant in a criminal action unless the defendant, in the first instance, puts his own character in evidence. *Ginger* v. *Commonwealth,* 137 Va. 811, 120 S. E. 151; *State* v. *Sheppard,* 49 W. Va. 582, 39 S. E. 676, 678; *State* v. *Miller,* 75 W. Va. 591, 84 S. E. 383, 384. Though not sustained by the trial court, these repeated efforts of the prosecuting attorney had a cumulative effect which, coupled with the other happenings in this case, were

dangerously apt to incite prejudice in the minds of the jury.

Defendant's counsel, as their third assignment of error, claim that Mrs. Thomas Harmon, a witness, was sworn and asked two questions in the defendant's absence, and, when the defendant returned to the room, she was re-sworn and the same two questions were again addressed to her. In support of this assignment of error, defendant's counsel cite us to *State* v. *Sheppard, supra;* and *State* v. *Greer*, 22 W. Va. 800. The record, however, does not disclose that the defendant was outside the room when this witness first began to testify. It simply shows the statement of defendant's counsel to the effect that the defendant was absent from the room while the first two questions were addressed to the witness, and the counter statement of the prosecuting attorney to the effect that the defendant never left the room but was standing near the door. The trial court overruled the motion of defendant's counsel for a mistrial based upon the claimed absence of the defendant. No effort having been made of record to show that the defendant was actually absent from the room, when the first two questions were asked the witness, we assume that the trial court was under the impression that the defendant was actually present during the whole course of the examination of the witness. We therefore find no error under this assignment.

After Gilfillen had testified on direct examination to the effect that he had passed a night with the prosecutrix at the Harmon home, during which he had relations with her, he was turned over to the prosecuting attorney for cross-examination. Thereupon, in the presence of the jury, the prosecuting attorney directed Captain Myers and Corporal Stillman, members of the West Virginia Department of Public Safety, who were present in the court room, to arrest the witness and take him to jail for rape. The officers then went to the witness stand and took hold of the witness and started off with him. Upon objection by defendant's counsel, the court interferred and forbade the arrest of the witness, stating that he was immune from arrest while in attendance upon the

court, and in going to and coming from home on such attendance. When the witness resumed his seat in the witness chair, the prosecuting attorney said: "Now you may get ready and arrest this man when you get your warrant, Mr. Officer." The court then said: "You have no right to arrest him coming and going from court." Thereupon, defendant's counsel moved for a mistrial. The court overruled the motion, directed the jury to disregard what had taken place, and again stated that the witness was immune from arrest while going to and from court. The prosecuting attorney then proceeded with the cross-examination of the witness. At its conclusion, he said, in the presence of the jury: "That is all, Gilfillen. I want to say to these officers that when this witness goes home, I want them to get a warrant for him for rape and have him put in jail." Upon objection by defendant's counsel, the court directed the jury to disregard this last statement of the prosecuting attorney.

Gilfillen was an important witness for the defense. He was brought to the witness stand for the purpose of contradiciting prosecutrix' testimony to the effect that she never had had sexual intercourse before the time she claimed the defendant had raped her. This testimony was likewise admissible because her previous character as to chastity is a matter bearing on the material issue whether or not she had consented. *State* v. *Kittle*, 85 W. Va. 116, 101 S. E. 70; *State* v. *Verto et al.*, 65 W. Va. 628, 64 S. E. 1025; *State* v. *Detwiler*, 60 W. Va. 583, 55 S. E. 654; *State* v. *Barrick*, 60 W. Va. 576, 55 S. E. 652. The prosecuting attorney's conduct towards this witness, in the presence of the jury, was calculated to undermine the credibility of his testimony.

On cross-examination, the defendant was asked "If it is not a fact that your wife didn't have to force you to marry her?" An objection to this question was sustained by the trial court. On another occasion, during the course of the trial, Corporal Stillman was asked whether or not any further examination or investigation was made as to whether or not the defendant was implicated in having sexual relations with other young girls, to which ques-

tion an objection was sustained. Then again, during the course of the cross-examination, the witness Gilfillen was asked by the prosecuting attorney, "Are you in the habit of having sexual intercourse with little girls this way?" After Gilfillen had testified that he had sexual relations with the prosecutrix, the prosecuting attorney asked him "You are in the habit of doing that kind of business, aren't you?" Objection to both these questions was overruled by the court. When, during his cross-examination, the defendant testified "* * * I am 56 years old and yet I have never been arrested and into trouble—" the prosecuting attorney said: "You ought to have been." Defendant's counsel interrupted, objected to the statement which was sustained by the court. This continued and persistent conduct, at least, had for its apparent purpose the creation of prejudice against the defendant.

In the trial of this case, the defendant was entitled to the benefit of a reasonable doubt. The very nature of the crime of which he was accused is "so revolting that it is difficult for the average jury to give the one accused the benefit of a reasonable doubt." *State* v. *Gill,* 101 W. Va. 242, 132 S. E. 490. This being so, this case should have been tried by counsel with the greatest of care and decorum. The very nature of the case should have prompted the prosecuting attorney in the exercise of the quasi judicial duty which, as prosecuting attorney, he owes to the state, to conduct himself in his manner toward the defendant and the witnesses so as to prevent any suspicion of any effort to incite prejudice in the minds of the jury. The law in this state regulating the conduct of a prosecuting attorney toward the accused and his witnesses has been stated by Judge Hatcher in *State* v. *Vineyard,* 108 W. Va. 5, 150 S. E. 144, and *State* v. *Hively,* 103 W. Va. 237, 136 S. E. 862. In *State* v. *Taylor,* 105 W. Va. 298, 142 S. E. 254, in syllabus 5, this court said: "The effect of the persistent efforts of counsel on the trial of a case to introduce improper and prejudicial evidence, after the trial court has ruled on its illegality, is not wholly cured by instructions to disregard it." In *State* v. *Summerville et al.,* 112 W. Va. 398,

164 S. E. 508 (Syl.), we held that "Abusive, intemperate and vituperative language indulged in by a prosecutor against the accused and his witnesses in argument to the jury and in the conduct of the trial, calculated to inflame the passions and prejudices of the jury, may be cause for reversal, although the language may be disapproved by the trial court in its rulings."

In the interest of justice, we cannot let the prejudicial conduct of this trial go unnoticed. The proper administration of justice under our American system of jurisprudence, especially in criminal trials such as this, calls for the orderly conduct thereof. The personal abuse by counsel of parties litigant or witnesses, whether during the course of examination or in the argument before the jury, when calculated to prejudice the jury and inflame its passions is reversible error. *State* v. *Taylor, supra; State* v. *Summerville, supra; State* v. *Morris & Johnson,* 96 W. Va. 291, 122 S. E. 914; *Franko* v. *Crosby,* 278 Ill. App. 416; *Massey* v. *Alston,* 173 N. C. 215, 91 S. E. 964; *Maiden* v. *Boyd,* 36 S. D. 451, 155 N. W. 187; *Masterson* v. *Chicago & N. W. Ry. Co.,* 102 Wis. 571, 78 N. W. 757; *Galveston, H. & S. A. Ry. Co.* v. *Washington,* 42 Tex. Civ. App. 380, 92 S. W. 1054; *Gulf, C. & S. F. Ry. Co.* v. *Dooley,* 62 Tex. Civ. App. 345, 131 S. W. 831. We think the conduct of the prosecuting attorney in this case was prejudicial error, which was not cured by the court's instruction.

The giving of instruction No. 1, offered by the state, is also assigned as error. This instruction informs the jury that they may not consider the warrant under which the defendant was arrested. That warrant was for statutory rape. The defendant was indicted, tried and convicted for rape with force and arms. The instruction simply informs the jury to disregard a matter which is irrelevant and immaterial. We do not think it improper.

The judgment of the trial court is therefore reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*