# CHARLES TOWN.

## STATE v. MOONEY AND FRIDAY.

### Decided September 7, 1901.

1. INDICTMENT FOR FELONY—*Preliminary Examination.*
   Where an indictment for felony is found, the accused is not entitled to a preliminary examination before a justice before trial. (p. 713).

2. FORMER DECISIONS APPROVED.
   The syllabi in *State* v. *Shawn*, 40 W. Va. 1, *Landers* v. *Railroad Company*, 46 W. Va. 492, and *State* v. *Allen*, 45 W. Va. 74, as to remarks of counsel to a jury, are re-affirmed.

Error to Circuit Court, Ohio County.

John Mooney and Frank Friday were convicted of murder, and bring error.

*Affirmed.*

W. W. ARNETT, for plaintiffs in error

R. H. FREER, ATTY. GEN., ALEX DULIN and JOHN A. HOW-ARD, for the State.

BRANNON, PRESIDENT:

The evidence in this case is not certified; but it appears that James Hervey was shot and killed 1st of March, 1900, by a man whose face was covered with a red handkerchief. John Mooney and Frank Friday were jointly indicted for the murder of Hervey, and were sentenced to death in the criminal court of Ohio County, and their sentence having been affirmed by the circuit court of that county, they have brought a writ of error in this Court. I do not think that I can improve upon the opinions delivered in those courts in the case, and I do not think it necessary to do more than insert the opinions of the judges of those courts delivered in the case. Judge T. J. Hugus of the criminal court filed the following opinion: "The prisoners, on being arraigned upon the indictment found against them, moved the court to send them before a justice for preliminary examination. This motion was refused, and that ruling is now assigned as a ground for a new trial. Their claim to a preliminary examination previous to trial seems to rest on a statute passed by the legislature of this State on the 3d day of April, 1873. This act provided: 'Before any person charged with a felony is tried before a circuit court, he shall be examined before the county court, unless he waives such examination by his assent entered of record.'

This act continued in force until the 23d day of December, 1875, on which day it was repealed by chapter 92 of the Acts of 1875. During its brief existence, it came before the Supreme Court for consideration in four cases, viz: *Buskirk* v. *Judge Ward,* 7 W. Va. 91; *State* v. *Stewart,* 7 W. Va. 731; *State* v. *Abbot,* 8 W. Va. 746, and *State* v. *Strauder,* 8 W. Va. 686.

In this last one, yet generally remembered in this county, the act in question saved Strauder from the gallows. Nothing, however, was decided in any of these cases tending to throw any light on the ruling under consideration, further than to show, as was decided in the *Strauder case,* that no one could be tried for a felony, while the act was in force, without a preliminary examination, if one was demanded.

The act providing for an examination before trial by the

county court, did not in terms repeal any other statutory provision nor did it do so by implication. It simply provided for a special or additional examination, before trial, of all felonies. Such examination was to take place before the county court, then a recently created tribunal. Its repeal in two years after enactment put an end to this special preliminary examination before the county court, and left the law as to examination, indictment and trial, as it was before the enactment, and substantially, if not identically, as it is now.

Not only has the statute providing for such preliminary examination been repealed, but the county court, which had exclusive jurisdiction to hold it, has been abolished. This, then, would seem to end, so far as that statute and the county court are concerned, all possible contention that a preliminary examination is a legal prerequisite to a trial now.

And such a contention cannot be based upon our present statute, which is chapter 156 of the Code of 1891, relating to 'Arrest, Commitment and Bail.' This chapter is identical with chapter 156 of the Code of 1868, except that there is omitted from it section 19, permitting certain misdemeanors, like assault and battery, to be settled by the parties themselves, and not to be prosecuted to indictment and trial, when so settled. Chapter 156 of the Code was not repealed, expressly or by implication, by the Act of 1873, providing for special examination by the county court. The arrest, commitment and bail, and examination before a justice, provided for in chapter 156 of the Code of 1868, continued in force during the existence of that special statute, as it had before and does to-day in the same chapter in the Code of 1891.

There is, then, certainly no law now requiring preliminary examination before trial.

On the other hand, however, there is express statutory authority for proceeding to indictment and trial without preliminary examination. This is very evident from the statutes in force now relating to the finding of indictments and to trial thereon. Section 1 of chapter 158 of the Code of 1891, in express terms, permits the finding of an indictment without an examination. Its last clause reads: 'And the indictment may in the first instance, whether the accused has been examined or committed by a justice or not.' Now the indictment having been found, the next step is to proceed to trial.

This is apparent from section 1 of chapter 159 of the Code of 1891, the first sentence of which reads: 'When an indictment is found in the circuit court of any county against a person for a felony, the accused, if in custody, or if he appear in discharge of his recognizance, or voluntarily, shall, unless good ground be shown for a continuance, be tried at the same term.'

These two provisions of section 1 of chapters 158 and 159 of the Code as read, seem to me to be conclusive against the claim that no trial can occur until after preliminary examination. There was no error in refusing prisoner's motion for a preliminary examination.

I have not referred to the Virginia case, because the Virginia statutes differ essentially from ours. Virginia has no statute like the last clause of section 1 of chapter 158, permitting an indictment to be found without an examination. That provision first appears as Virginia law in the Code of West Virginia of 1868.

Complaint is also made of the invitation to the defendant Mooney to put on a mask. This is assigned as another ground for a new trial.

This is analagous, I think, to the case of asking a prisoner to stand up, or expose his person. Such requests he may comply with or not, as he may see fit. If he declines, or voluntarily complies, no error results from the question. Mooney might have been asked when testifying to put the mask on, and the simple interrogatory would not have been error. So I think in argument when in connection with the reference to the mask, counsel says: 'And I invite him to put it on,' it was not going beyond the limits of permissible argument.

Objection is also made to certain statements during the argument, and the making of these statements is alleged as ground for a new trial. In Arnold v. Com., (Ky.) 55 S. W. 894, counsel used very much such argument as complained of in this case. In his opening the prosecuting attorney said: 'He did not desire to have any man's blood on his hands; asked the jury to perform their full duty lest some one else's blood might rest on their hands in case of a too lax administration of the law.' The court said it was eminently proper to call the jury's attention to the responsibilities resting upon them, and to the duties they, as members of a tribunal created by law to ascertain the facts from evidence, are required to perform. And in this case, coun-

sel in closing his argument, 'Appealed to the jury for a substantial penalty in order to suppress lawlessness, repeating a conversation he had with a resident of another county in which he was told that in that county only two murders had been committed in fifty years, and that the men who had committed them were hung by the neck, and that this had the effect to completely stamp out the commission of murder in that county.' The repetition of this conversation by counsel was condemned by the court, but was held not to constitute reversible error.

This holding of the Kentucky court is much like the holdings of our own Court in *Shawn's Case,* 40 W. Va. 1. Here counsel said to the jury: 'If you sentence him to the penitentiary for life, it won't be five years till he will be let out again to enter upon a new course of crime.'

Apropos of this remark and as a comment thereon, our Supreme Court says: 'The choice between two modes of punishment, in case the jury find the case to be murder in the first degree, is absolutely with the jury, and it is difficult to limit the considerations which shall govern a jury, if deducible from the nature of the crime and its perpetrator as manifested by the evidence.'

In view of the Kentucky decision and the observations of our own Supreme Court, it was not in my judgment error for counsel in argument to say: 'Let him off to murder some other James Hervey; * * * * to turn loose on society some murderers like these; * * * * this is simply a case of murder with the death penalty; * * * * in behalf of Henry Hervey, speaking for him and the State, I demand of you a verdict of murder in the first degree.' There was evidence upon which these statements and appeals could be predicated.

Nor do I think it was error to allude to the pride, courage and manhood of the jurors, as counsel seemed to do in the use of the sentences: 'It is an evidence of the weakness of the men who were on the jury; * * * * it would be a reflection upon your strength of character.' These allusions to the jurors are matters more of taste, or propriety than anything else. Nothing severer can be said of them, I think, than that they may not have been in good taste.

Our Supreme Court further says in *Shawn's Case,* that 'Where a criminal trial is fair in other respects, a conviction will not be set aside for improper remarks of counsel, where the verdict of

conviction is plainly warranted by the evidence and no other verdict could have been found without misconduct of the jury.'

In my judgment, this is a case where the evidence so justifies the verdict returned that had the jury found any other verdict, they would have been guilty of misconduct. If the evidence so warrants the verdict, improper arguments will not be regarded as in any way instrumental in securing it. It will be regarded as the verdict of jurors convinced, by the testimony, and forced to render it because the testimony demanded it. And of this sort is, I think, the verdict rendered in the case."

In the circuit court Judge Thayer Melvin filed the following opinion: "At the April term, 1900, of the criminal court of Ohio County, the defendants were convicted of the crime of murder in the first degree. Subsequently they moved for a new trial and the motion having been overruled and judgment rendered upon the verdict, they applied for and obtained a writ of error from this Court. Several grounds of error are alleged.

1. The indictment was preferred on March 5, 1900. The defendants were then in custody but had not been examined by a justice touching the felony charged. Before the trial came on they insisted by plea and otherwise upon being remanded for such examination. This was refused. A reversal is sought because of such refusal.

No constitutional right or privilege is invoked. It is argued, however, that the statute (Code, chapter 158, 1) makes necessary such examination. It reads, in part: 'The trial of a person on a charge of felony shall always be by indictment; and the indictment may be found in the first instance, whether the accused has been examined or committed by a justice or not.' Differing constructions have been placed upon the latter clause. By the defendants it is claimed that the right to a preliminary hearing is here implied—that the effect is merely to allow it to follow the indictment; by the State, that after indictment is found, no further preliminary investigation is required in any event.

There does not appear to be any enactment bearing directly upon the question. Other provisions are believed, however, to have a controlling influence. Chapter 156, entitled 'Arrest, Commitment and Bail,' contemplates such an examination. But this relates to a period anteceding affirmative action by the grand jury. The title of the chapter and the arrangement of chapters so indicate, and the reading of certain of the sections make

it clear.  No directions looking to such proceedings have been
pointed out or observed.  On the contrary, a different procedure
seems to be prescribed.  Section 14 of chapter 158, relating to
indictments and process thereon, makes it the duty of the court
to issue *a capias* for the arrest of a person indicted for a felony
and not in custody, and the officer making the arrest is required,
not to deliver to a justice for a judicial inquiry, but to such
court, if sitting, or to the jailor of the county.  Section 18.  And
under section 1 of chapter 159, the accused, if he is in custody or
voluntarily appears, is to be tried at the same term at which the
indictment is presented, unless cause is shown for a continuance.
These serve to make apparent the legislative intention.  Read
with the quoted clause they show that no judicial inquiry by
an inferior tribunal is contemplated or warranted after action of
the grand jury, even if none was had before.

It is not seen that this interpretation takes away or affects
injuriously any right belonging to an accused person.  The prac-
tice is within the control of the law-making power in criminal, as
in civil cases, the only limitations being those contained in the
Constitution.  See *Commonwealth* v. *Jones,* 86 Va. —, (10 S.
E. 1005).  For is it clear that any substantial advantage would
have accrued to the plaintiff's in error if their plea had been sus-
tained?  They had needed information of the charge and had
the aid of counsel before and at the trial.  It is said, however,
that they would have had the opportunity of hearing in advance
the testimony for the State, and thus have been better enabled
to make their defense.  But is this certain?  An indictment
might well be held to furnish evidence of probable cause to be-
lieve the accused guilty and to require him to be held to court;
and such probable cause is the only matter for the determination
of the justice.  And there is no rule requiring the production of
all the testimony for the prosecution at a preliminary investiga-
tion.  In any view, prejudicial error is not perceived.

2.  The record sets forth some of the remarks of counsel to the
jury in the closing argument for the State, which remarks, it is
insisted, were not only improper, but hurtful to the defendants.
The judge who presided has certified, however, that no objection
was interposed on this account before the retirement of the jury.
Clearly if the language used was deemed improper, the atten-
tion of the court should have been promptly invited to the fact,
and its interposition sought.  Failing that, or a request for an

instruction having reference to the irregularity, if irregularity there was, it was not to be considered on the motion to set aside. *State* v. *Chisnell,* 36 W. Va. 660; *Landers* v. *Railroad Co.,* 46 *Id.* 492. Besides, the evidence has not been certified and it is impossible to say that the remarks were unjustifiable. To warrant a reversal this must appear. *State* v. *Shawn,* 40 W. Va. 1; *State* v. *Allen,* 45 W. Va. 74.

The same counsel during his argument requested one of the defendants, Mooney, to place the handkerchief found in his possession when arrested over his face, and to stand up in the presence of the jury; this, to afford an opportunity of determining to what extent witnesses could identify one with covered ·features, one·or more having testified that while the face of the man who did the felonious shooting was thus covered, he, 'looked to be the defendant Mooney.' A colloquy ensued, the named defendant signifying his assent if his counsel so directed, the counsel saying that he would object to the request and except and then ·have the defendant comply; thereupon the court advised him that he need not do so, and the request was· withdrawn, the defendant then objecting and excepting because of his having been so requested.

It is unnecessary to go over all the grounds traversed by counsel in the recent oral discussion. The principle already alluded to is deemed decisive. While the propriety of the request is more than doubted, it is not seen that the defendant, under the circumstances, was prejudiced by what occurred. But were it otherwise, the court should have been asked to set the jury right by an instruction eliminating the objectionable matter from their consideration. This was not done. Instead, the defendant remained silent, excepting, it is true, but not to any ruling of the court. It was not asked to interfere in any manner, and its voluntary intimation of opinion was not unfavorable to the defense. This being so, the point could not avail on the motion to set aside.

3. The motion was made on the 16th of April, 1900, and was argued and submitted five days thereafter. There was no reservation except as to affidavits of newly discovered evidence. On May 18th, the day on which the motion was decided, certain affidavits were offered, notably, one made by the two defendants charging misconduct before or during the trial (dates not being given) against the assistant counsel for the State and the

sheriff of the county, by which, as averred, a fair and impartial trial was prevented. It is unnecessary to quote at length. This affidavit tends to show attempts to influence witnesses by intimidation and otherwise. And it is charged that the arrest of certain persons, whose names are given, for supposed complicity in the offense was brought about by the counsel solely for the purpose of discrediting them as witnesses for the defense. Other matters are alleged, but the most material are those noted. Objection being made to the filing, the affidavit was rejected, and the rejection is assigned as ground of error. ·

I am of opinion there was no error: 1. The affidavit was not in time. It was not offered until nearly a month after the right to file the same had ceased to exist. No leave to file was asked, no excuse for the delay suggested. Its consideration would have been the result of grace and favor merely. But there is more. For aught that is disclosed, whatever of fact existed was known to the affiants before the case went to the jury. That was the time to make the complaint. Undue delay is generally fatal. It will not serve to hold back information of misconduct affecting the administration of justice for use only in the event of an adverse finding. Here it must be assumed that every thing set up was within the knowledge of the affiants before the jury had the case. And if so, whatever right was theirs, was lost by their own neglect. *Flesher* v. *Hale,* 22 W. Va. 45, is in point. That case related to jurors, it is true, but no different principle applies when misconduct of counsel is alleged.

2. The charges, many of them vague, were made upon information and belief, and there was no supporting evidence. The names of the informants were withheld, the source of information concealed. It was the plain duty of the affiants to advise the court of all particulars known · to them. Something more tangible than hearsay allegations is required. 14 Ency. of Pleading and Practice 905.

3. It is certified by the trial judge that so much as relates to the intimidation of witnesses was shown by the evidence adduced on the trial to be untrue. In the absence of any formal certificate of evidence, this must be taken in contradiction. Certainly, its effect is to discredit the affiants as witnesses in this behalf. Without going so far as to hold that the unsupported statement of one convicted of felony is not in any case to be received, it is to be said that in this instance largely on account of the nature

of the charges, the lapse of time and the absence of specific state-ments of fact corroborative evidence was essential. No mention was made of such evidence. No request looking to its procure-ment for use at another time was preferred. The paper itself was offered as making the case of the affiants. It was not the best evidence of which the matter was susceptible and was prop-erly held insufficient.

Having reached this conclusion, it is unnecessary to consider objections directed more particularly to different portions of the affidavit.

The record shows other exceptions, but as to them it will suf-fice to say that error is not apparent.

The judgment of the criminal court of Ohio County is af-firmed."

We can find nothing in the record of this case, solemn as the judgment is, to warrant this Court in annulling a sentence which we must take to be based on a verdict fully warranted by the evidence, and to be the result of a fair trial. The matters al-leged against this conviction are unsubstantial, and should not be allowed to defeat the plain demands of public criminal jus-tice. Therefore we must affirm the judgments of the circuit court of Ohio County in this case.

BRANNON, PRESIDENT:

A second brief for the prisoners presented since the foregoing opinion was written lays particular stress upon the allegation that the assistant prosecuting attorney and sheriff suppressed evidence favorable to the prisoners by intimidating witnesses. This brief seems to call for an analysis of the affidavit made by the prisoners in support of that point. That affidavit is en-tirely inadequate. Clearly a new trial cannot be had for the suppression of evidence, unless it appear that evidence was sup-pressed and what that evidence was, and that it was material, and that it could be procured upon another trial. A new trial cannot be had upon the mere hope or expectation that evidence can be produced on another trial. There must be some stable foundation to believe that such material evidence exists and will be produced, and that it will call for a different verdict. *State v. Madison, supra,* (38 S. E. 492). The affidavit does not com-ply with the principle governing applications for a new trial on

newly discovered evidence, which are on like basis with appli-
cations for new trial based on suppressions of evidence. *Roderick*
v. *Railroad Company,* 8 W. Va. 54, holds that to get a new trial
on new evidence the party must state that he had conversed with
the witness proposed, and must detail the testimony that witness
will give. *Strader* v. *Goff,* 6 W. Va. 257, says that there must
be an affidavit of the informant, and that an affidavit of the
party or a third person will not do. *Brown* v. *Speyer,* 20 Grat.
296, requires the affidavit of the new witness as to his evidence,
or if that is impracticable, the affidavit of persons who have con-
versed with that witness, stating the facts he will testify. Now,
this affidavit says that the prisoners "are informed and positively
believe" that the assistant prosecuting attorney and sheriff pro-
cured the arrest of Reilly, Lynch and Conners on the charge of
being accessories before the fact in the murder in order to impair
and destroy the effect of their evidence." Is it possible that the
mere fact of the arrest, at the instance of public officers, who are
conservators of the peace, shall call upon a court to grant a new
trial upon the mere pretense that such arrest was for the pur-
pose of intimidating witnesses without adequate evidence of such
intent? The affidavit does not state what evidence those parties
would give, which is a serious defect. If we may infer from it
that they were expected to testify that they saw the prisoners in
Wheeling on the night of the murder about eight o'clock, less
than thirty minutes before the murder occurred at a distance of
five and a half miles from Wheeling, then it appears that Reilly
and Lynch did so state on the trial. Their evidence was not
suppressed. Are we to say that the mere arrest broke the effect
of their evidence? How do we know that? Are we to say that
the arrest in the administration of criminal justice of a person
who happens to be a witness impairs his evidence and calls for
a new trial? The affidavit does not intimate any other evidence
which these parties were expected to give. Conners did not
testify. Why he did not, we do not know. What evidence would
he give? We do not know. His affidavit as to what evidence he
would give is not filed. Not a man who heard Conners say what
he knew about the case, if anything, is vouched for his expected
evidence. The prisoners do not say that they knew he would give
any particular evidence. Are we to guess that he would give
evidence favorable to the prisoners? The affidavit says further
that the assistant prosecuting attorney "as affiants believe for the

express purpose of intimidating witnesses for the defense" declared "as affiants are informed and believe in the presence of said witnesses that any person who should testify that affiants were in the city at 8 o'clock P. M. on the night of said homicide," he, the assistant prosecuting attorney would have arrested, and that this intimidated said witnesses. It does not appear who so informed the prisoners. It did not intimidate two of them, for they gave that evidence, and as to Conners we have no reliable statement as to what he would say on another trial, no ground on which to base any confidence as to his evidence. Authorities above cited hold this inadequate. In addition, this intimidation was denied, as stated above by Judge Melvin. The affidavit states that the sheriff, as affiants are informed and believe, summoned Wingerter for the defendants, and that said sheriff told Wingerter that he was expected to testify that he saw the prisoners in Wheeling at 8 o'clock of the night of the murder, and that the sheriff "then talked to said witness in a way and to the effect that was prejudicial to the affiants." Now, the party who induced the prisoners to believe that the sheriff so talked to Wingerter in a way prejudicial to the prisoners is not named. What did the sheriff say to Wingerter that was prejudicial? We do not know from this affidavit. Wingerter testified on the trial that he did see the prisoners, but whether on the night of the murder or some other night he could not say. The affidavit avers that he could and would have testified that he saw the prisoners on the night of the murder in Reilly's saloon. Are we to say without evidence of the fact from Wingerter or anybody else that Wingerter would testify on another trial that he saw the prisoners in Reilly's saloon on the night of the murder in the face of his own evidence that he could not say that he saw them there on that night? Wingerter did not say so. The prisoners did not hear him say so. We are asked to assume that the sheriff kept him from saying so by talk "in a way and to the effect that was prejudicial" to the prisoners, when we do not know what that talk was. We are asked to annul this verdict on these vague, general, weak and inconclusive statements and surmises, resting on no solid basis.

*Affirmed.*