The judgment is reversed and the cause remanded.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## WILSON v. STATE.

### No. 20152.

Court of Criminal Appeals of Texas.

March 1, 1939.

Rehearing Denied April 12, 1939.

Leave to File Second Motion for Rehearing Denied April 19, 1939.

Henry Taylor, of Temple, for appellant.

Jas. K. Evetts, Dist. Atty., of Belton, and Lloyd W. Davidson, State's Atty., of Austin, for the State.

KRUEGER, Judge.

The offense is murder; penalty assessed is confinement in the state penitentiary for a term of two years.

The indictment charges that the appellant "did then and there unlawfully, voluntarily and with malice aforethought kill Lon Garner by beating him with his hands and fists and kicking him with his feet * * *."

Appellant's first contention is that the evidence is insufficient to sustain his conviction. The state's witness, Bob Taylor, testified that he was in the King Cole Cafe in Belton, Texas, on February 7, 1938, talking to Lon Garner, the deceased, when the appellant walked in the front door. Deceased had his back to the door at the time. Appellant rushed in between the witness and the deceased and said to the latter: "You damned s—— of a b——." The witness turned and walked towards the rear of the building to get out of the way and appellant and the deceased began fighting and hitting each other. In about a minute, deceased was knocked down and fell on his back. Appellant stood in front of him for a minute and then said to the deceased: "Get up from there you son of a b——." Upon being told not to hit the deceased any more, appellant walked to the back of the cafe but returned and stomped the deceased twice. No weapon of any kind was seen in the hands of the deceased or about his body at the time. There was testimony of other witnesses to the same effect.

Dr. M. P. McILhannon examined the deceased after he had been taken to the hospital and testified concerning his condition as follows: " * * * He was bleeding from his left ear, considerable hemorrhage from his left ear, and some from his right ear, and had a fracture beginning just above the eye, and going back across the side of his head, and then he had one beginning here and coming back over the eye ball, and then he had a couple of broken ribs here in the left side of the chest wall, near the breast bone." He also stated that it was his opinion that the deceased died from the injuries found on his body.

Appellant testified that during the past few years he had been boarding at Mrs. Allie Hammack's; that for two or three years prior to the difficulty, he and Mrs. Hammack had been engaged to be married. That on the 7th day of February, 1938, the deceased came to Mrs. Hammack's home and he, appellant, told him that he ought not to be there as he was a married man. Deceased replied that he would see appellant later and left. Mrs. Hammack had theretofore told appellant that the deceased had been there trying to make a date with her and that this was embarrassing to her. Mrs. Hammack, who since the difficulty has become appellant's wife, testified to the same effect.

After the deceased had left Mrs. Hammack's place, appellant went to the King Cole Cafe, purchased a bottle of beer and carried it home, where they had it with lunch. When he carried the bottle back to the cafe, as he had promised to do, he noticed the deceased standing with his back toward him near the cigar stand. The deceased turned around and upon seeing appellant, struck him, knocking his glasses off. Appellant testified that he kept retreating and the deceased kept advancing upon him. That he did not hit him with the bottle but only with his fists. That he did not go to the cafe with the intention of doing the deceased any serious bodily injury.

W. B. Smith testified that on the afternoon of the difficulty between appellant and the deceased, he saw the appellant who told him he was going to whip Lon Garner. Appellant denied this meeting on the witness stand. Mr. Evetts testified that two or three days after the alleged difficulty, appellant came to his office and in a conversation relative to the difficulty, said that the injuries to the deceased were probably caused from either his kicking or stomping him.

Appellant in due time filed a plea for a suspension of sentence in case of his conviction. He proved a good reputation as a law-abiding citizen and further that he had not theretofore been convicted of a felony in this or any other state.

The evidence, when properly analyzed, shows that the deceased was knocked down and fell with the back of his head upon the concrete floor, where he lay without making any effort to get up. That appellant walked away, but in about a minute returned and stomped him two or three times with high heel shoes.

It will be noted that the attending physician testified that he found two fractures of the skull; one beginning just above the eye and extending back across the side of the head and the other coming back over the eyeball. That in addition thereto, he had two fractured ribs which caused hemorrhage of the lungs and produced pneumonia from which he was suffering at the time of his death. The record is silent as to what part of the body of the deceased that appellant stomped.

It occurs to us that if the fracture of the skull was produced by the back of the head striking the concrete floor, the fracture would have been in the back and not the fore part of his head. Hence we think the evidence justified the inference that both the fracture of the skull and the ribs was produced by the stomping. There is no evidence that the fracture of the skull was produced by the head falling upon the floor; it is merely a supposition. However, if by stomping the injured party, appellant had only fractured the ribs, as a result of which pneumonia developed and resulted in death, the death would be imputable to the wound. In the case of Powell v. State, 13 Tex.App. 244, 254, this court said: "It is an ancient and well settled principle of the law of homicide, that, if a wound causes a disease which produces death, the death is imputable to the wound." See, also, Gardner v. State, 44 Tex.C.R. 572, 73 S.W. 13; Duque v. State, 56 Tex.C.R. 214, 119 S.W. 687.

When appellant, a man of great physical strength, brought his foot, shod with high heel shoes, down upon the body of a helpless man with great force, he evinced a cruel and evil disposition which gave rise to a presumption of an intent to kill. It may be conceded that appellant did not have the intent to kill the deceased at the time when he went into the cafe, but he might have formed the intent when he went to the injured party and stomped him. Under all the facts and circumstances proved, we would not be justified in disturbing the verdict of the jury.

By bills of exceptions numbers three and six, appellant complains of the action of the court in permitting the state, on cross-examination, to ask him: "Don't you remember coming to my office some two or three days after the fight and after you made bond for aggravated assault, at which time you told me that you walked in there, and turned him around or struck at him, and that you clinched and waltzed across the floor until you got a chance to break loose, and hit him, at which time he hit the floor and didn't get up, and that I told you that he was in bad shape from a fractured skull and broken ribs, and you stated 'I guess that's when I stomped him'?"

The objection thereto was based on the ground that appellant was out on bond at the time to answer to a charge of aggravated assault and battery as a result of the injuries which he had inflicted upon the deceased and which subsequently proved fatal; that he was not warned by the district attorney prior to making said statement as required by Art. 727, C.C.P.

It clearly appears from these bills that appellant was not under arrest or in custody of the officers; nor was he confined in jail or in any other place. Consequently the statement made by him does not come within the terms of Art. 727, C.C.P., prohibiting the use of a confession made by one accused of crime while in jail or other place of confinement, or while in custody of an officer, unless voluntarily made and reduced to writing and signed by him after being duly warned as prescribed by statute.

Appellant addressed a great number of objections to the court's charge. To discuss each of them would unnecessarily extend this opinion and serve no useful purpose, inasmuch as they appear to be without merit. We will, however, discuss the one in which he complains that the court failed to instruct the jury that if the deceased fell or was knocked down on the floor by the defendant without the specific intent to kill him, and as a result of said fall the deceased received serious bodily injury resulting in his death, that then, and in that event, they could not convict him either of murder with or without malice.

Had the court given such a charge, then he would have been required to also instruct the jury that if the defendant stomped the deceased without a specific intent to kill, and as a result of said stomping, the deceased received serious bodily injury resulting in his death, they (the jury) could not convict him either of murder with or without malice. The court, instead of giving such separate instructions relative to each injury, gave the following charge: "You are instructed that although you may believe from the evidence in this

case beyond a reasonable doubt, if you do, that the defendant Wilson did beat Lon Garner with his hands and fists and kick him with his feet, and was not acting in self defense as that right is hereinafter defined and explained to you, yet unless you further find and believe from the evidence beyond a reasonable doubt that he did so, if he did, with the specific intent then and there to kill the said Garner, then you cannot convict the defendant of either grade of murder, as above defined to you."

This charge, we think, was sufficient to meet the objection. This is especially true since no one testified that the skull was fractured as a result of falling on the floor, or that he died alone from the fractured skull. The testimony rather indicated that not only the skull was fractured by stomping with high heel shoes, but also two ribs were fractured and that he died from pneumonia as a result of an injury to the lung. We think the court gave a very exhaustive charge upon every phase of the case made by the testimony.

All other matters complained of by appellant have been considered by us and are deemed to be without merit.

The judgment of the trial court is affirmed.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

On Motion for Rehearing.

GRAVES, Judge.

In his motion for rehearing appellant raises but one question, and that is relative to the court's charge.

Paragraph five of the court's charge is as follows: "Therefore, you are instructed that if you find and believe from the evidence in this case, beyond a reasonable doubt, that the defendant, S. O. Wilson, in the County of Bell and State of Texas, on or about the 7th day of February, A. D. 1938, as alleged in the indictment, did, with his malice aforethought, unlawfully and voluntarily kill Lon Garner by beating said Garner with his hands and fists and kicking him with his feet, and not in self-defense, as that right is hereinafter defined and explained to you, you will find the defendant guilty of murder

with malice aforethought and fix his punishment at death or at confinement in the penitentiary for life or for any term of years not less than two, as you may determine and state in your verdict. But unless you do so find and believe or in the event you have a reasonable doubt thereof, then you must acquit the defendant of murder with malice aforethought, and you may next consider whether he is guilty of murder without malice or some lesser offense as hereinafter defined and explained to you."

On account of the fact that the instruments used in causing the death of Mr. Garner were not deadly weapons per se, it was appellant's contention that he had no intent to kill Mr. Garner at the time he struck him with his hands and fists and kicked him with his feet, and that it was the duty of the court to incorporate in such paragraph of the court's charge the idea that it was necessary that the jury find that defendant had the specific intent to kill before he could be convicted under the instruction therein.

We think that the appellant answered his own contention when he quoted paragraph ten of such charge, which is as follows: "You are instructed that although you may believe from the evidence in this case beyond a reasonable doubt, if you do, that the defendant Wilson did beat Lon Garner with his hands and fists and kick him with his feet, and was not acting in self defense as that right is hereinafter defined and explained to you, yet unless you further find and believe from the evidence beyond a reasonable doubt that he did so, if he did, with the specific intent then and there to kill the said Garner, then you cannot convict the defendant of either grade of murder, as above defined to you."

It is evident that in construing the court's charge it must be taken as a whole on account of the fact that ofttimes all the law can not be embraced in each separate paragraph thereof, and while it might have been the better policy to have embodied the charge relative to a specific intent to kill in paragraph five, nevertheless we are of opinion that the portion of the charge found in paragraph ten relates back to said paragraph five, and caused the jury to know that before they could find the appellant guilty of either grade of murder, that it was necessary that they find that he had a specific intent to kill

Mr. Garner at the time set forth in the indictment.

We are impressed with the soundness of the original opinion herein, and think that it properly disposes of this case, and therefore the motion will be overruled.