STATE OF WEST VIRGINIA

*v.*

FRED CLIFFORD PAINTER

(No. 10300)

Submitted September 12, 1950. Decided December 12, 1950.

108

*Salisbury, Hackney & Lopinsky, D. Boone Dawson,* and *Lon G. Marks,* for plaintiff in error.

*William C. Marland,* Attorney General, *George W. Stokes, Assistant Attorney General,* for defendant in error.

LOVINS, PRESIDENT:

Fred Clifford Painter, hereinafter designated as defendant, prosecutes this writ of error to a judgment of the Circuit Court of Kanawha County, West Virginia.

The defendant and Harry Atlee Burdette were jointly indicted by a grand jury of Kanawha County for the murder of Edward C. O'Brien. They were given separate trials. The State elected to try Burdette first, his trial resulting in a conviction of murder of the first degree. In accordance with the verdict, Burdette was sentenced to be "punished with death". The decision of this Court on a writ of error granted Burdette is shown by the opinion in the case of *State* v. *Burdette,* 135 W. Va. 312, filed contemporaneously with this opinion.

The facts, stated in the opinion in *State* v. *Burdette, supra,* with the exceptions hereinafter noted, are substantially the same as the facts in the instant case and will not be restated in this opinion.

In addition to the facts stated in the opinion in *State* v. *Burdette, supra,* a witness for defendant, Frank A. Blum, testified that he was an eye witness to the altercation in which O'Brien lost his life; that Burdette and Painter were "extremely" drunk; that O'Brien had a small open knife in his left hand during the fight; that O'Brien was knocked down and that Burdette kicked O'Brien about the head and shoulders several times; that Painter kicked at O'Brien, but the witness believed that the defendant did not touch O'Brien; that the witness then went after the police; and that upon his return to the scene there were two officers present and the fight had ended.

Defendant introduced the testimony of Burdette, his co-defendant, the material part of which is substantially as follows: That the witness and defendant purchased four pints of liquor; that the defendant and the witness drank that amount of liquor before they left the Club Poolroom; that the witness, the defendant, and another person drank a portion of another pint of whiskey; and that the defendant had two drinks out of another bottle of whiskey owned by an acquaintance.

Burdette also testified that the defendant purchased eight "yellow jacket" capsules; that he took two of the capsules; and that the defendant took at least two of such capsules.

The testimony of Burdette relative to the fight with O'Brien differs from that of some of the other witnesses. According to Burdette, O'Brien and the defendant were engaged in the altercation when Burdette crossed Summers Street; that O'Brien had a knife and was attempting to cut the witness; that he tried to prevent O'Brien's cutting him; that he did not see the defendant touch O'Brien and did not know whether the defendant actually

did touch O'Brien; and that during the fight he, Burdette, was dazed.

Two laymen testified that the defendant suffers from syphilis. A physician introduced by defendant testified that the defendant is afflicted with cerebral syphilis; and considering that fact with the fact that defendant, prior to the homicide, had drunk a considerable quantity of intoxicating liquor and had taken two capsules, presumably containing barbitol or a barbitol derivative, the defendant did not know the nature and consequences of his acts, and therefore did not know right from wrong. The physician so testifying based his diagnosis of cerebral syphilis on the results shown by Hinton, Mazzini and Kahn tests for syphilis, and possibly a Wassermann test.

A physician called by the State gave his opinion that if defendant prior to the homicide had consumed the amount of intoxicants testified to by defendant's witnesses and had taken the two capsules hereinabove mentioned, he would have been prostrate and that the effect of the narcotic drugs taken by defendant would have been comparable to an anesthetic. The physician called by the State also testified that from an examination of defendant made on the day the witness testified, he concluded that the defendant at the time of the trial was "a man of low average intelligence"; that an accurate diagnosis of cerebral syphilis could not be based on the Hinton, Mazzini and Kahn tests; that in addition to such tests the patient's history should be given; and that the patient should likewise be given a urological test, a blood count, and his spinal fluid should be examined.

Upon the evidence stated in the opinion of *State* v. *Burdette, supra,* and additional evidence herein stated, the jury found the defendant guilty of murder of the first degree.

After overruling a motion to set aside the verdict as being contrary to the law and the evidence, the intermediate court adjudged that the defendant "be punished

with death". The judgment of the trial court having been pronounced, defendant moved the court in arrest of judgment, which motion was likewise overruled.

The Circuit Court of Kanawha County denied defendant a writ of error holding that the judgment of the intermediate court of that county is "plainly right". The case was brought to this Court by writ of error to the judgment of the circuit court.

Defendant contends that it was error: (1) To overrule the demurrer to the indictment and a motion to quash the same; (2) to permit the prosecuting attorney in his opening statement, over objections of defendant, to state, "The State expects to offer evidence to prove the commission of the crime which for heinousness, orneryness and plain cussedness it is difficult to conceive."; (3) to overrule the motion to set aside the verdict and refuse to grant defendant a new trial; (4) to overrule a motion in arrest of judgment; (5) to sentence defendant to death under the evidence and circumstances established in this case as inflicting cruel and unusual punishment in violation of Article III, Section 5 of the Constitution of this State, and the 8th Amendment to the Constitution of the United States; (6) to admit improper evidence and to reject proper evidence; (7) to give certain instructions offered by the State; and (8) to refuse to give certain instructions tendered by defendant.

This record does not disclose any motion to continue the case; nor does it show that the motion to set aside the verdict of the jury was based on the ground of after-discovered evidence.

The record and defendant's brief show no grounds for demurrer to the indictment. What has been said relative to a demurrer to the indictment applies with equal force to a motion to quash. The indictment in the instant case is the same as the indictment in the *Burdette* case. This Court's reasoning in that case is sufficient to dispose of the question in the instant case and is supported by the

authorities cited. It would therefore serve no purpose to repeat the reasoning and citation of authorities appearing in the *Burdette* case. It suffices to say that the trial court committed no error in overruling the demurrer to the indictment and the motion to quash the same.

The language objected to by defendant used in the opening statement by the prosecuting attorney was not supported by evidence, at the time the statement was made. The prosecuting attorney was apparently stating an inference drawn by him from his knowledge of the facts established in the *Burdette* case, which was tried prior to the instant case. The record in the *Burdette* case discloses that O'Brien was killed in a brutal, savage encounter, and hence the statement of the prosecuting attorney in the instant case is not entirely without factual basis. But counsel for defendant had an opportunity to remove the unfavorabe impression, if any, made on the jury by such statement. Nevertheless, we do not approve such extreme statements by a prosecuting officer.

An opening statement in the trial of a criminal prosecution is not exactly analogous to an argument to the jury, but the similarity is sufficient to permit the application of principles enunciated in opinions dealing with improper statements made by counsel in arguments.

A judgment of conviction should not be reversed for improper remarks of counsel to a jury, which do not clearly prejudice the accused. *State* v. *Shores,* 31 W. Va. 491, 500, 7 S. E. 413; *State* v. *Shawn,* 40 W. Va. 1, 20 S. E. 873; *State* v. *Allen,* 45 W. Va. 65, 73, 30 S. E. 209; *State* v. *Mooney and Friday,* 49 W. Va. 712, 718, 39 S. E. 657. In ruling on the propriety of the prosecuting attorney's cpening statement to the jury a trial court exercises a judicial and reviewable discretion. And such ruling is not cause for reversal in the absence of prejudice to an accused, unless it appears that manifest injustice has resulted from such statement. *State* v. *Simon,* 132 W. Va. 322, 52 S. E. 2d 725, 734; *State* v. *Lewis,* 133 W. Va. 584, 57 S. E. 2d 513, 527, *et seq.* See *Thomas* v. *State* (Ga.), 87

S. E. 8. There was no error in the trial court's ruling on the statement by the prosecuting attorney.

The next assignment of error is based on the action of the trial court in overruling the motion to set aside the verdict and grant defendant a new trial. This assignment of error presents, among others, three questions: (1) Was the defendant intoxicated or under the influence of drugs to such extent that he was rendered incapable of premeditation and deliberation; (2) was the defendant insane at the time he committed the crime; and (3) did the combination of intoxicating liquors, drugs and syphilis render defendant mentally incapable of committing the crime charged against him?

At common law voluntary drunkenness was considered an aggravation and not an excuse for crime. Permanent insanity, as distinguished from temporary aberration, even though such insanity is produced by excessive and long continued drinking, is a defense to the commission of crime. *State* v. *Kidwell*, 62 W. Va. 466, 59 S. E. 494. In trials for homicide, evidence of gross intoxication, so as to destroy the power of deliberation and capacity to meditate, may be shown so as to reduce the homicide from murder of the first degree to murder of the second degree. But that defense is not available to a person accused of homicide, when he has voluntarily and intentionally drunk intoxicating liquors so as to prepare himself for the commission of the homicide. *State* v. *Robinson*, 20 W. Va. 713; *State* v. *Davis*, 52 W. Va. 224, 43 S. E. 99; *State* v. *Hertzog*, 55 W. Va. 74, 46 S. E. 792; *State* v. *Dillard*, 59 W. Va. 197, 200, 53 S. E. 117; *State* v. *Kidwell, supra; State* v. *Lemon*, 84 W. Va. 25, 31, 99 S. E. 263; *State* v. *Corey*, 114 W. Va. 118, 125, 171 S. E. 114.

Similar principles have been approved in other jurisdictions. See *Boswell* v. *Commonwealth*, 20 Gratt. 860; *Willis* v. *Commonwealth*, 32 Gratt. 929; *Gills* v. *Commonwealth*, (Va.), 126 S. E. 51; *Little* v. *Commonwealth*, (Va.), 175 S. E. 767; *Cody* v. *Commonwealth*, (Va.), 23

S. E. 2d 122; *Director of Public Prosecutions* v. *Beard,* 12 A. L. R. 846; and annotation 12 A. L. R. 861.

Some of the witnesses introduced by the defendant testified that he was grossly drunk. Other witnesses offered by the State testified that defendant was under the influence of intoxicants but was in possession of his mental faculties. The circumstances surrounding the killing of O'Brien; the ability of the defendant to procure a knife from Burdette's pocket; and the fact that he made a connected and coherent statement to the police officers a short while after the homicide, coupled with the testimony of the witnesses in behalf of the State, support the verdict of the jury. We cannot say as a matter of law that defendant's mental faculties were impaired by intoxicating liquors to such an extent that he was incapable of premeditation and deliberation.

The evidence is conflicting whether defendant was suffering from insanity. One physician, who is a general practitioner, gave his opinion that defendant did not know right from wrong, in view of the fact that he had used a quantity of intoxicants and narcotics, and was suffering from cerebral syphilis. Another physician, who is a psychiatrist, after a somewhat short examination, gave as his opinion that defendant, at the time of the trial, was sane. The psychiatrist further testified in response to a hypothetical question that if defendant had used the amount of intoxicants and narcotics assumed in such question, he would have been in a comatose state.

The jury saw the witnesses and heard their testimony. We cannot say that the jury verdict was wrong, and that the defendant was insane at the time of the fight in which O'Brien lost his life. We do not think this record shows as a matter of law that defendant was insane at the time the crime was committed from any cause or combined causes. It may be that he was easily led by his companion, and that his intelligence was of a low order. Nevertheless, he was at that time legally responsible. He knew right from wrong and the consequences of his and Bur-

dette's actions in brutally, ferociously, and savagely assaulting the deceased.

An outstanding feature of this case is that the killing was accomplished by means of the hands and feet of Burdette and the defendant. In *M'Whirt's* case (decided at the June term, 1846) III Gratt. 566, the defendant was found guilty of murder of the second degree. The court therein discussed the question whether an accused could be found guilty of murder in using weapons with which he had been provided by nature. Judge Lomax quoted with approval the saying of Lord Holt that " 'barbarity will often make malice.' " The acts of M'Whirt were characterized as being excessively cruel, and it was said that the fists of a human being are not ordinarily regarded as deadly weapons, but may become deadly by often repeated, and long continued blows "applied to the vital and delicate parts of the body of a defenseless, unresisting man on the ground. And if to the injury they are capable of producing, when wielded by a strong man, you add all the accompanying injuries which the more powerful agency of stamping the party on the ground may inflict, there might be strong ground to infer the intention not merely to cause great bodily harm, but even death itself."

Where there are circumstances of brutality and violence an intentional killing may be presumed. *Dawkins v. Commonwealth,* (Va.), 41 S. E. 2d 500. Malice may be inferred from the use of fists and stamping by feet, where the attack is brutal, savage and violent, and an intention to kill may be presumed from those circumstances. *Carson v. Commonwealth,* (Va.), 49 S. E. 2d 704. See *Maulding v. Commonwealth,* (Ky.), 189 S. W. 251; *Commonwealth v. Lisowski,* (Pa.), 117 A. 794; *Wilson v. State* (Tex. Cr. App.) 126 S. W. 2d 977; *Shackelford v. CommonWealth,* (Va.), 32 S. E. 2d 682. Cf. *State v. Roush,* 95 W. Va. 132, 120 S. E. 304. Aside from the *M'Whirt* case, we have found no authority in this jurisdiction involving a killing with fists and feet such as is here shown. We are,

however, impressed with the soundness of the reasoning in the cases above cited, and apply the principles of those cases to the facts of the instant case, with the observation that in this case the deceased was done to death by two men, who were the aggressors and who assaulted deceased so viciously as to shock the sensibilities of civilized persons. In fact, defendant and his companion resorted to "the law of the jungle". The facts established by this case are such that malice is inferrable from the acts of defendant and Burdette.

We have hereinbefore discussed the mental capacity of the defendant. During the fight in which O'Brien was killed the defendant had sufficient time to deliberate and premeditate on the consequences of the action in which he was then engaged. It is not necessary that premeditation and deliberation exist for any particular length of time. It is sufficient if the intent to kill should come into existence at the time of the killing or "at anytime previous". *State v. Clifford,* 59 W. Va. 1, 52 S. E. 981; *State v. Porter,* 98 W. Va. 390, 127 S. E. 386. See *State v. Bowles,* 117 W. Va. 217, 221, 185 S. E. 205; and *State v. Farley,* 125 W. Va. 266, 272, 23 S. E. 2d 616.

A motion in arrest of judgment should be based upon some error of law appearing on the face of the record, which vitiates the proceedings. Part 1, Volume IV, Minor's Institutes, Page 764. A judgment will not be arrested except for errors apparent on the record. *State v. Martin,* 38 W. Va. 568, 18 S. E. 748. See *Gerling v. Insurance Co.,* 39 W. Va. 689, 693, 20 S. E. 691; *Hughes v. Frum,* 41 W. Va. 445, 23 S. E. 604; *Dempsey v. Poore,* 75 W. Va. 107, 109, 83 S. E. 300. The efficacy of a motion in arrest of judgment at common law has been lessened somewhat by the West Virginia criminal statute of jeofails, Code, 62-2-11. *State v. DeBoard,* 119 W. Va. 396, 194 S. E. 349.

A search of this record discloses no error precluding the court from rendering the judgment of sentence herein pronounced, and it was not error therefore to overrule the motion in arrest of judgment.

The assignment of error relating to cruel and unusual punishment is not supported in defendant's brief by citation of authority or argument. But owing to the fact that this is a capital offense, we have carefully examined that question. The Legislature has the " 'power to create and define crimes and fix their punishment, so only that such punishment is not cruel or unusual or disproportionate to the offense.' " *Cohn* v. *Ketchum,* 123 W. Va. 534, 538, 17 S. E. 2d 43; *State* v. *Woodward,* 68 W. Va. 66, 69 S. E. 385; *State* v. *Wamsley,* 68 W. Va. 103, 69 S. E. 475; and *State* v. *Wamsley,* 68 W. Va. 104, 69 S. E. 476. In *State* v. *Woodward, supra,* there is an instructive discussion relative to the provisions of Article III, Section 10 of the Constitution of West Virginia and the Fourteenth Amendment to the Constitution of the United States with respect to punishments for crime.

Defendant, without more, invokes the provisions of Article III, Section 5 of the Constitution of this State, and the Eighth Amendment to the Constitution of the United States. "Excessive bail shall not be required * * * nor cruel and unusual punishment inflicted. Penalties shall be proportioned to the character and degree of the offense. * * *" Article III, Section 5, Constitution of West Virginia. "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Eighth Amendment to the Constitution of the United States. In *State* v. *Woodward, supra,* the Court pointed out that the constitutional inhibition against cruel and unusual punishment was directed toward the former barbarous practices under the common law in inflicting torture on unfortunate criminals. In *State* v. *Page,* 100 W. Va. 166, 171, 130 S. E. 426, the following language was used: " 'The power of the Legislature to prescribe the punishment for the offense is very broad, and must be left to the judgment of that body as to what punishment will be adequate for the purpose of deterring others from the commission of crime, and for the reformation of the offender.' " Although in *State* v. *Page, supra,* the Court had under consideration the ques-

tion of a penalty imposed for failure to retain property for taxation, we think the language quoted appropriate and pertinent in a criminal case. See *Franklin et al.* v. *Brown,* 73 W. Va. 727, 81 S. E. 405. In the case of *In Re Kemmler,* 136 U. S. 436, 34 L. ed. 519, 10 S. Ct. 930, the court considered the constitutionality of the statute of the State of New York providing for carrying out a death sentence by means of electrocution. The statute was upheld as not being repugnant to the provisions of the Constitution. The Court in the *Kemmler* case adverted to the fact that if the punishment provided by statute was manifestly cruel and unusual "as burning at the stake, crucifixion, breaking on the wheel, or the like, it would be the duty of the court to adjudge such penalties to be within the constitutional prohibition." No such questions are presented here. *McElvaine* v. *Brush,* 142 U. S. 155, 35 L. ed. 971; 12 S. Ct. 156. See Cooley's Constitutional Limitations, 8th ed., Vol. 1, Page 692 *et seq;* and *O'Neil* v. *Vermont,* 144 U. S. 323, 36 L. ed. 450, 12 S. Ct. 693.

Chapter 37, Acts of the Legislature, 1949, passed March 12, and in effect from passage, provides that a sentence of death shall be carried out by electrocution, with some exceptions unnecessary here to note. We see no violation of the constitutional provisions forbidding cruel, unusual and disproportionate punishment, and hold that there is no merit in the assignment of error with respect thereto.

We now come to a discussion of the assignments of error based on the admission and rejection of evidence. "An appellate court will not interfere with the action of a lower court in admitting evidence, unless it can say the court below clearly erred." *State* v. *Clark,* 64 W. Va. 625, 632, 63 S. E. 402.

The State introduced, over defendant's objection, a newspaper which had been picked up by a witness out of a pool of blood where O'Brien was killed. The ground of objection is that it was not picked up until two hours or more after the occurrence of the homicide. The garments of a prisoner procured from him while in jail were

introduced in evidence, over objection, in a trial for homicide, and was held that the action was not erroneous. *State* v. *Baker,* 33 W. Va. 319, 10 S. E. 639. The introduction of evidence similar to that here considered was upheld in the case of *State* v. *Welch,* 36 W. Va. 690, 15 S. E. 419. The action of the court in permitting similar evidence to go to the jury was held to be without error in the case of *State* v. *Henry,* 51 W. Va. 283, 41 S. E. 439. The trial court in the *Henry* case permitted the clothes of the prisoner, secreted in defendant's room and located after the homicide, to go to the jury as evidence. Bandages which had been applied to the injuries inflicted by the accused have been admitted in evidence. *State* v. *Mc-Donie,* 89 W. Va. 185, 109 S. E. 710.

It is elementary that the weight of testimony is to be determined by the jury. Even though the newspaper was a gruesome exhibit and may or may not. have carried weight with the jury, that does not go to its admissibility. The newspaper was at the scene of the crime, and, according to the record in this case, the altercation started over the solicitation on the part of defendant and Burdette to sell a newspaper to O'Brien, or to purchase a newspaper from him. The relevancy of this item is slight, but it is not entirely absent. We do not consider the admission of that item of testimony error.

Objection is made by defendant to the admission in evidence of the shoes which Burdette was wearing at the time of the homicide, and the testimony with respect to blood spots thereon. *State* v. *Henry, supra,* is authority for the proposition that the shoes were admissible, since they were one of the instruments used in the commission of the homicide. See *Westberry* v. *State,* (Ga.), 164 S. E. 905; *Spencer* v. *Commonwealth,* (Ky.), 35 S. W. 2d 319. It was not error to admit Burdette's shoes over the objection of defendant.

The testimony of a witness was admitted, over the objection of defendant, showing the number of times Burdette kicked O'Brien. Burdette and defendant having

acted together in the killing of O'Brien, the evidence was properly admitted. *State v. Cook,* 81 W. Va. 686, 95 S. E. 792. See *State v. Baker,* 84 W. Va. 151, 99 S. E. 252; 2 Wharton's Criminal Evidence, 11th ed., Section 699. This assignment of error is without merit.

The State in cross examining a police officer was permitted, over the objection of defendant, to elicit information with respect to a prior report made by the police officer. We can see no error in permitting the questions propounded to the officer, in order to lay the foundation for subsequent impeachment of the police officer's testimony if such impeachment had been necessary.

Defendant assigns as error the refusal of the trial court to require the prosecuting attorney to show his counsel the police officer's statement. This assignment of error is so insubstantial as to require no discussion, and we dismiss it by saying that no error appears in the action of the trial court in that particular.

On rebuttal the State was permitted to examine another police officer with reference to certain portions of the statement above mentioned. Such action of the court is assigned as error. Defendant argues that since he did not testify in his own behalf the introduction of parts of the statement allegedly made by him to the police officer on rebuttal was error. This record discloses that parts of the statement were introduced for the purpose of rebutting the evidence offered by defendant as to his sanity, it being the State's theory apparently that since defendant had attempted to show he was insane, the fact that after the homicide he made a coherent statement to the police officer would tend to disprove that theory. We do not think that the trial court erred in permitting the examination of the witness on rebuttal relative to the statement made by the accused to the police officer.

The trial court refused to permit a medical expert to testify as to the contents of capsules denominated "yellow jackets". There was no proof in the record showing the

actual contents of the capsules taken by the defendant. Moreover, this record shows that he took only two of such capsules. Expert testimony is not admissible, when it is elicited by a hypothetical question which states or assumes facts not admitted or proved. *State* v. *Taylor,* 105 W. Va. 298, 142 S. E. 254. See *Cline* v. *Evans and Tallman,* 127 W. Va. 113, 31 S. E. 2d 681; *Williams* v. *State Compensation Commissioner,* 127 W. Va. 78, 31 S. E. 2d 546; *Blair* v. *Coal & Coke Co.,* 107 W. Va. 507, 148 S. E. 849.

The trial court excluded evidence of a physician which was to the effect that if defendant had syphilis, had drunk a large amount of beer, and a considerable amount of other intoxicants, such acts and the diseased condition would affect the mentality of the accused. The physician had already testified that in his opinion the defendant was insane. The testimony intended to be elicited in this instance amounted to a substantial repetition of testimony already given. We therefore can see no prejudicial error in refusing to permit the physician to reiterate his opinion.

Defendant assigns as error the action of the trial court in giving, over his objection, instructions Nos. 1, 2, 3, 4, 5, 6, 8, 9 and 10, tendered by the State.

By State's instruction No. 1 the jury was instructed that one of five verdicts could be returned, if the evidence so warranted: murder of the first degree, murder of the second degree, voluntary manslaughter, involuntary manslaughter, and not guilty. The instruction defined the four offenses, and directed the jury's attention to the punishments to be inflicted in the event a verdict was found for either of the four offenses. This instruction was a correct statement of the law, and the action of the court in giving it was without error. *State* v. *Roberts,* 122 W. Va. 536, 11 S. E. 2d 172. See *State* v. *Whitt,* 96 W. Va. 268, 122 S. E. 742.

Defendant objected to the giving of State's instruction No. 2, and challenges its correctness at some length in his brief. State's instruction No. 2 reads as follows: "The

Court instructs the jury that where an unlawful homicide is proved, the presumption in this state is that it is murder of the second degree, and the burden is on the state of showing, if she can, that it was murder of the first degree; and upon the accused of showing, if he can, that it was without malice, and therefore only manslaughter, or that he acted lawfully, and is therefore not guilty. The Court further instructs the jury that in arriving at a verdict in this case as to the degree of guilt, if any, the jury should take into consideration all the evidence and circumstances in the case, that given both of the state and the defendant."

The foregoing instruction is in substantially the same form as an instruction which was approved by this Court in the case of *State* v. *White,* 81 W. Va. 516, 518, 94 S. E. 972. A similar instruction was approved in the case of *Sims* v. *Commonwealth,* (Va.), 115 S. E. 382, 387; *Groety* v. *Commonwealth,* (Va.), 115 S. E. 561. Defendant argues that the instruction, as given in the instant case, precludes the return of a verdict of murder of the second degree, and contends that the burden was put upon the accused of rebutting a charge of crime by proof that he did not commit a higher offense. We think this objection poses a *non sequitur.* In discussing the instruction in *Sims* v. *Commonwealth, supra,* Judge Burks said: "When it is said that 'the burden is upon the prisoner' to reduce the offense from murder in the second degree to manslaughter or excusable homicide, all that is meant is that it is incumbent upon the prisoner to introduce evidence sufficient to raise a reasonable doubt in the minds of the jury as to whether the offense is murder in the second degree." We think the foregoing language is applicable, and paraphrasing it we think that all that was meant in the instant case was that it was incumbent upon the defendant to raise a reasonable doubt in the minds of the jury whether the homicide was murder of the first degree. In the report of the case of *Sims* v. *Commonwealth, supra,* a marginal list of cases will be found in 115 S. E. at page 387, wherein the above-quoted instruction or one

similar has been approved. The trial court did not err in giving State's instruction No. 2.

State's instruction No. 3 may be criticised as being somewhat abstract; nevertheless, it gave the jury a rational basis for determining the lapse of time involved in the mental process of premeditation and deliberation. *State* v. *Clifford, supra; State* y. *Porter, supra.* See *Shiflett* v. *Commonwealth,* (Va.), 130 S. E. 777; *Jones* v. *Commonwealth,* (Va.), 45 S. E. 2d 908. We can find no error in the giving of State's instruction No. 6.

State's instruction No. 7 was withdrawn and not given.

Defendant in his brief does not point out any error in the giving of State's instructions Nos. 8, 9 and 10, and, after a meticulous examination of those instructions, we see no grounds of error on the part of the trial court in giving them.

The defendant assigns error to the action of the trial court in refusing to give defendant's instructions Nos. 2, 3, 4, 5, 7, 14 and 24.

Instruction No. 2, tendered by defendant, would have instructed the jury that the greatest offense of which defendant could have been found guilty was involuntary manslaughter. Instruction No. 3 would have directed the jury that the greatest offense of which defendant could have been found guilty was voluntary manslaughter; and defendant's instruction No. 4 would have instructed the jury that the greatest offense of which defendant could have been found guilty was murder of the second degree. It was not error to refuse defendant's instructions Nos. 2, 3 and 4. We reiterate that the facts of this case justified the jury in returning a verdict of murder of the first degree.

Instruction No. 5, is covered by instruction No. 6, tendered by defendant and given. There was no reason for repetition of an instruction.

Defendant's instruction No. 7 was given, and, therefore, an assignment of error cannot be predicated upon its refusal.

Defendant's instruction No. 14, in a measure, attempted to give the meaning of the phrase "reasonable doubt". That part of the instruction should not have been given. The latter part of instruction No. 14 was covered by defendant's instructions Nos. 6 and 7, tendered by the defendant and given. It was not error to refuse to give defendant's instruction No. 14.

Defendant assigns as error the modification of instructions Nos. 17 and 20, tendered by defendant. Instruction No. 17 would have directed the jury that if they believed defendant "was *temporarily* insane at the time of the commission of the homicide, they should find him not guilty." The court deleted the word "temporarily." The defense of temporary insanity to an indictment charging homicide has, in effect, been approved by this Court. *State* v. *Alie,* 82 W. Va. 601, 96 S. E. 1011. But in the instant case proof of the temporary nature of defendant's alleged insanity is not shown in the record. Furthermore, the defense of insanity predicated upon intoxication, use of narcotic drugs and the disease of cerebral syphilis was presented by defendant's instruction No. 20, as modified and given.

The modification of instruction No. 20 consisted of deletion of the italicized words from the phrase "and further that he had two *or more* yellow jackets". The court further modified instruction No. 20 by deleting the following phrase: "if he knew, had not the power to control or restrain his actions", and substituting the following: "he did not know the nature and consequences of his acts."

The deletion of the language in instruction No. 20, indicating that defendant had taken more than two "yellow jackets" was proper, for the reason that the evidence shows that he took two of the capsules.

In discussing the theory of irresistible impulse, as advanced in *State* v. *Harrison,* 36 W. Va. 729, 742, *et seq.,* 15 S. E. 982, after an extended review of the decided cases, Judge Brannon rejects the doctrine of irresistible

impulse as a defense to crime, and ably maintains that the true and simple principle for determining the responsibility of a person for crime is: Did the accused at the time of committing the crime know right from wrong? *State* v. *Maier,* 36 W. Va. 757, 15 S. E. 991; *State* v. *Evans,* 94 W. Va. 47, 117 S. E. 885; *State* v. *Fugate,* 103 W. Va. 653, 138 S. E. 318; *State* v. *Beckner,* 118 W. Va. 430, 190 S. E. 693.

There are some departures from the "right and wrong" test in other jurisdictions, as shown by a discussion of the theory of irresistible impulse found in 2 Bouvier's Law Dictionary at page 1594. The doctrine of irresistible impulse does not preclude the mental capacity of a defendant to know right from wrong, but advances the theory that the mind of a defendant is so diseased that he has no freedom of will and that his powers of self-control and choice have been destroyed by disease. This is a somewhat refined distinction. We think however that the mental capacity to distinguish between right and wrong carries with it the capacity to resist an impulse to do wrong.

The modification of defendant's instruction No. 26, although adverted to in the State's brief, is not assigned as error. The case of *State* v. *Manstoff,* 118 W. Va. 214, 189 S. E. 698, is authority for the modification made by the court.

We have discussed in extended detail all the assignments of error made by defendant. The events and result of this trial are tragic indeed; but the defendant has violated an old and basic law of every civilized, social order; a jury of his fellow-citizens has found him guilty of that violation, and this Court finds no reason to overrule that finding.

We therefore affirm the judgments of the Circuit and Intermediate Courts of Kanawha County, and remand this case to the intermediate court for the purpose of fixing a date for carrying the judgment of that court into effect.

*Affirmed.*